**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **TIMOTHY CESARIO, STEVE CIESLAK, GREGORY LAROCCO, JAMES LEE, FRANK ANDERSON, EDWARD ESBOLDT and LESTER NELSON**<br><br>Plaintiffs,<br><br>v.<br><br>**JEWEL FOOD STORES, INC., aka JEWEL-OSCO, a Cerberus Capital Management Company, d/b/a JEWEL-OSCO, NEW ALBERTSON'S INC., and JEWEL OSCO SOUTHWEST LLC,**<br><br>Defendants. | No. 17 cv 00319<br><br>Judge Manish S. Shah<br>Magistrate Judge M. David Weisman |

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendants Jewel Food Stores, Inc., a division of New Albertson's, Inc. (incorrectly named as Jewel Food Stores, Inc., aka Jewel Osco, a Cerberus Capital Management Company, d/b/a Jewel-Osco) by and through their attorneys, hereby submit their answer and affirmative defenses to Plaintiffs' First Amended Complaint as follows:

### JURISDICTION, VENUE, AND PARTIES

1.      This action is brought pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634 *et. seq.* ("ADEA"), Americans with Disabilities Act of 1990 as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), and 28 U.S.C. §§ 1331, 1343(a)(3) and (4).

**ANSWER:**    Defendants admit that Plaintiffs bring claims pursuant to the above cited statutes, but deny that they have violated any of such laws.

2.      Jurisdiction exists under 28 U.S.C. § 1331 because this action arises under the laws of the United States, and §1343(4) because this action arises from an Act of Congress for

the protection of civil rights and 28 U.S.C. § 1367 for supplemental jurisdiction of related state claims. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights guaranteed by federal law, which rights provide for damages, injunctive and other relief for illegal discrimination in employment.

**ANSWER:** Defendants admit that jurisdiction is proper under federal law, but denies any applicable or appropriate supplemental jurisdiction as all non-federal claims were dismissed pursuant to the Court's Order dated November 7, 2017.

3. Venue in this district is proper under 42 U.S.C. § 2000e-5(f) (3) and 28 U.S.C. § 1391(b) and (c) because the unlawful employment practices occurred in this district and one or more parties reside in this district.

**ANSWER:** Defendants admit that venue is proper in this judicial district.

## THE PARTIES

4. Plaintiff, Timothy Cesario ("Cesario"), is a sixty-one-year-old male and resident of Kendall County, Illinois.

**ANSWER:** Defendants admit paragraph 4.

5. Plaintiff, Steve Cieslak ("Cieslak"), is a fifty-six-year-old male and resident of DuPage County, Illinois.

**ANSWER:** Defendants admit paragraph 5.

6. Plaintiff, Gregory LaRocco ("LaRocco"), is a sixty-one-year-old male and resident of Kane County, Illinois.

**ANSWER:** Defendants admit paragraph 6.

7. Plaintiff, James Lee ("Lee"), is a fifty-nine-year-old male and resident of Cook County, Illinois.

**ANSWER:** Defendants admit paragraph 7

8. Plaintiff, Frank Anderson ("Anderson), is a fifty-nine-year old male and resident of Cook County, Illinois.

**ANSWER:** Defendants admit paragraph 8.

9. Plaintiff, Edward Esboldt ("Esboldt"), is a fifty-seven-year-old male and resident of Will County, Illinois.

**ANSWER:** Defendants admit paragraph 9.

10.     Plaintiff, Lester Nelson ("Nelson"), is a fifty-six-year-old male and resident of Will County, Illinois.

**ANSWER:**     Defendants admit paragraph 10.

11.     At all times relevant hereto, Plaintiffs were over forty (40) years of age.

**ANSWER:**     Defendants admit paragraph 11.

12.     Defendants collectively own and operate a chain of grocery stores with locations throughout Illinois including this judicial district. Defendants collectively are engaged in an industry affecting commerce and, at all times pertinent hereto, was an employer within the meaning of 29 U.S.C. § 630(b) and 42 U.S.C. § 2000e(b). On information and belief, Defendants employ more than five hundred (500) employees.

**ANSWER:**     Defendants admit that Defendants Jewel Food Stores, Inc., a division of New Albertson's Inc. own and operate a chain of grocery stores with locations throughout Illinois including in this judicial district, and that they are engaged in commerce and, at all times pertinent hereto, was an employer within the meaning of 29 U.S.C. § 630(b) and 42 U.S.C. § 2000e(b). Defendants admit that Defendants Jewel Food Stores, Inc., a division of New Albertson's Inc. employ more than five hundred (500) employees.   Defendants deny the remaining allegations in paragraph 12.

13.     Defendant Jewel Food Stores, Inc. is an Ohio Corporation, with its principal place of business in the Village of Itasca, DuPage County, IL.

**ANSWER:**     Defendants admit paragraph 13.

14.     Defendant New Albertson's, Inc., is an Ohio Corporation, with its principal place of business in Boise, Idaho, and doing business in this judicial district.

**ANSWER:**     Defendants admit paragraph 14.

15.     Defendant Jewel Osco Southwest LLC is an Illinois Limited Liability Corporation, with its principal place of business in Boise, Idaho, and doing business in this judicial district.

**ANSWER:**     Defendants deny paragraph 15.

16.     Venue is appropriate in this judicial district in that Plaintiffs reside here and all Defendants have their principal place of business here and/or do business here.

**ANSWER:**     Defendants admit paragraph 16.

## CESARIO'S EEOC FILING

17.     Cesario is employed by Defendant as a Store Director.  Cesario is still employed but is currently on long term disability from Defendant.

**ANSWER:**     Defendants admit paragraph 17.

18.     On or around December 4, 2015, Cesario filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC").  On or around December 14, 2015, Cesario filed an Amended Charge of Discrimination with the EEOC. Cesario's Charge of Discrimination was filed within three hundred (300) days after the alleged unlawful employment practice(s) occurred. More than sixty (60) days have expired since Cesario filed his EEOC Charge. Cesario has otherwise complied with all administrative prerequisites to filing this action.

**ANSWER:**     Defendants admit that on December 4, 2015 Cesario filed a Charge of

Discrimination against New Albertsons Inc., AB Acquisitions LLC and Jewel-Osco with the

EEOC, and that on December 18, 2015, Cesario filed an amended Charge against the same

Respondents.  Defendants admit that more than 60 days expired between Cesario's filing of his

EEOC Charge and the filing of his Complaint.  Defendants deny the remaining allegations set

forth in paragraph 18.

19.     On or around January 6, 2017, Cesario received his Notice of Right to Sue from the EEOC. (See Exhibit A attached hereto).  Cesario timely filed this complaint within ninety (90) days of receipt of the EEOC's Notice of Right to Sue.

**ANSWER:**     Defendants admit paragraph 19.

## CIESLAK'S EEOC FILING

20.     Cieslak has been employed by Defendant as a Store Director.  Cieslak is currently employed but on long term disability.

**ANSWER:**     Defendants admit paragraph 20.

21.     On or around June 26, 2015, Cieslak filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC").  On or around December 14, 2015, Cieslak filed an Amended Charge of Discrimination with the EEOC.

Cieslak's Charge of Discrimination was filed within three hundred (300) days after the alleged unlawful employment practice(s) occurred. More than sixty (60) days have expired since Cieslak filed his EEOC Charge. Cieslak has otherwise complied with all administrative prerequisites to filing this action.

**ANSWER:** Defendants admit that on June 26, 2015 Cieslak filed a Charge of Discrimination against Jewel-Osco with the EEOC, and that on December 18, 2015, Cieslak filed an amended Charge against the same Respondent. Defendants admit that more than 60 days expired between Cieslak's filing of his EEOC Charge and the filing of his Complaint. Defendants deny the remaining allegations set forth in paragraph 21.

22. On or around January 6, 2017, Cieslak received his Notice of Right to Sue from the EEOC. (See Exhibit B attached hereto). Cieslak timely filed this complaint within ninety (90) days of receipt of the EEOC's Notice of Right to Sue.

**ANSWER:** Defendants admit paragraph 22.

## LAROCCO'S EEOC FILING

23. LaRocco was employed by Defendant as a Store Director. LaRocco's employment ceased on August 17, 2015 as a result of employment termination.

**ANSWER:** Defendants admit paragraph 23.

24. On or around August 6, 2015, LaRocco filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"). On or around August 19, 2015, LaRocco filed an Amended Charge of Discrimination with the EEOC. On or around December 9, 2015, LaRocco filed a Second Amended Charge of Discrimination with the EEOC. LaRocco's Charge of Discrimination was filed within three hundred (300) days after the alleged unlawful employment practice(s) occurred. More than sixty (60) days have expired since LaRocco filed his EEOC Charge. LaRocco has otherwise complied with all administrative prerequisites to filing this action.

**ANSWER:** Defendants admit that on August 6, 2015 LaRocco filed a Charge of Discrimination against Jewel Food with the EEOC, and that on August 21, 2015, LaRocco filed an amended Charge against the same Respondent. Defendants admit that more than 60 days expired between LaRocco's filing of his EEOC Charge and the filing of his Complaint.

Defendants deny the remaining allegations set forth in paragraph 24.

25.     On or around January 6, 2017, LaRocco received his Notice of Right to Sue from the EEOC. (See Exhibit C attached hereto) LaRocco timely filed this complaint within ninety (90) days of receipt of the EEOC's Notice of Right to Sue.

**ANSWER:**     Defendants admit paragraph 25.

### LEE'S EEOC FILING

26.     Lee was employed by Defendant as a Store Director. Lee's employment ceased on March 28, 2015 as a result of constructive discharge.

**ANSWER:**     Defendants admit that Lee was employed by Defendants as a Store

Director and admit that Lee voluntarily retired on or about March 29, 2015.  Defendants deny the

remaining allegations set forth in paragraph 26.

27.     On or around July 30, 2015, Lee filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC").  On or around December 9, 2015, Lee filed an Amended Charge of Discrimination with the EEOC.  Lee's Charge of Discrimination was filed within three hundred (300) days after the alleged unlawful employment practice(s) occurred.  More than sixty (60) days have expired since Lee filed his EEOC Charge. Lee has otherwise complied with all administrative prerequisites to filing this action.

**ANSWER:**     Defendants admit that on June 30, 2015 Lee filed a Charge of

Discrimination against Jewel Food with the EEOC, and that on December 18, 2015, Lee filed an

amended Charge against the same Respondent.  Defendants admit that more than 60 days

expired between Lee's filing of his EEOC Charge and the filing of his Complaint.  Defendants

deny the remaining allegations set forth in paragraph 27.

28.     On or around January 6, 2017, Lee received his Notice of Right to Sue from the EEOC. (See Exhibit D attached hereto) Lee timely filed this complaint within ninety (90) days of receipt of the EEOC's Notice of Right to Sue.

**ANSWER:**     Defendants admit paragraph 28.

## ANDERSON'S EEOC FILING

29. Anderson was employed by Defendant as a Store Director. Anderson's employment ceased on November 22, 2016 as a result of constructive discharge.

**ANSWER:** Defendants admit that Anderson was employment as a Store Director and that he voluntarily retired effective December 31, 2016. Defendants deny the remaining allegations set forth in paragraph 29.

30. On or around March 17, 2017, Anderson filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"). Anderson's Charge of Discrimination was filed within three hundred (300) days after the alleged unlawful employment practice(s) occurred. More than sixty (60) days have expired since Anderson filed his EEOC Charge. Anderson has otherwise complied with all administrative prerequisites to filing this action.

**ANSWER:** Defendants admit that Anderson filed a Charge of Discrimination against New Albertsons, Inc., AB Acquisitions LLC and Jewel-Osco on or around March 27, 2017. Defendants deny the remaining allegations set forth in paragraph 30.

31. On or around May 19, 2017, Anderson received his Notice of Right to Sue from the EEOC. (See Exhibit E attached hereto). Anderson timely filed this amended complaint within ninety (90) days of receipt of the EEOC's Notice of Right to Sue.

**ANSWER:** Defendants admit paragraph 31.

## ESBOLDT'S EEOC FILING

32. Esboldt was employed by Defendant as a Store Director. Esboldt's employment ceased on June 1, 2016 as a result of employment termination.

**ANSWER:** Defendants admit that Esboldt was employed as a Store Director. Defendants admit that Esboldt submitted his resignation on May 31, 2016. Defendants deny the remaining allegations set forth in paragraph 32.

33. On or around March 17, 2017, Esboldt filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"). Esboldt's Charge of Discrimination was filed within three hundred (300) days after the alleged unlawful employment practice(s) occurred. More than sixty (60) days have expired since Esboldt filed his EEOC Charge. Anderson has otherwise complied with all administrative prerequisites to filing this action.

**ANSWER:** Defendants admit that on March 20, 2017 Esboldt filed a Charge of Discrimination with the EEOC against New Albertsons Inc., AB Acquisitions LLC and Jewel-Osco. Defendants deny the remaining allegations set forth in paragraph 33.

34. On or around May 19, 2017, Esboldt received his Notice of Right to Sue from the EEOC. (See Exhibit F attached hereto). Esboldt timely filed this amended complaint within ninety (90) days of receipt of the EEOC's Notice of Right to Sue.

**ANSWER:** Defendants admit paragraph 34.

## NELSON'S EEOC FILING

35. Nelson was employed by Defendant as a Store Director. Nelson's employment ceased on February 3, 2017 as a result of constructive discharge.

**ANSWER:** Defendants admit that Nelson was employed as a Store Director. Defendants admit that he voluntarily resigned from his employment effective February 18, 2017. Defendants deny the remaining allegations set forth in paragraph 35.

36. On or around March 17, 2017, Nelson filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"). Nelson's Charge of Discrimination was filed within three hundred (300) days after the alleged unlawful employment practice(s) occurred. More than sixty (60) days have expired since Anderson filed his EEOC Charge. Nelson has otherwise complied with all administrative prerequisites to filing this action.

**ANSWER:** Defendants admit that on March 20, 2017 Nelson filed a Charge of Discrimination with the EEOC against New Albertsons Inc., AB Acquisitions LLC and Jewel-Osco. Defendants deny the remaining allegations set forth in paragraph 36.

37. On or around May 19, 2017, Nelson received his Notice of Right to Sue from the EEOC. (See Exhibit G attached hereto). Nelson timely filed this complaint within ninety (90) days of receipt of the EEOC's Notice of Right to Sue.

**ANSWER:** Defendants admit paragraph 37.

## GENERAL FACTS AS TO DEFENDANTS

38. Defendant is a grocery store retailer that owns and operates approximately one-hundred and eighty-five (185) stores throughout Illinois, Iowa and Indiana.

**ANSWER:**    Defendants admit paragraph 38.

39.    In 2006, Supervalu, Inc., a Delaware Corporation, acquired Albertson's, Inc. and all Albertson's-owned stores, including Jewel-Osco. Jewel-Osco became an operating unit of Supervalu, Inc.

**ANSWER:**    Defendants admit paragraph 39.

40.    Prior to 2011, Defendant operated most of its stores on a dual-store format so that Jewel food stores were operated and managed separately from Osco drug stores.

**ANSWER:**    Defendants admit that prior to 2011, Defendants operated most of its stores on a dual-store format so that it employed two store directors at each location, one overseeing the Jewel side of the business and one overseeing the Osco side of the business. Defendants deny the remaining allegations in paragraph 40.

41.    Prior to 2011, Defendant employed two (2) store directors in each store location, one director overseeing the food operations and one director overseeing the drug operations.

**ANSWER:**    Defendants admit that prior to 2011, Defendants operated most of their stores on a dual-store format, employing two store directors at each location, one overseeing the Jewel side of the business and one overseeing the Osco side of the business. Defendants deny the remaining allegations in paragraph 41.

42.    In early 2011, Defendant underwent a Reduction-in-Force ("RIF") and offered early buy-out incentive packages to Jewel and Osco Store Directors.

**ANSWER:**    Defendants admit that in early 2011 they underwent a reduction in force to eliminate store director positions based on a move from the traditional dual store director team to a single store director team in most locations, and in that process offered store directors enhanced buy-out packages under the Voluntary Resignation Plan. Defendants deny the remaining allegations set forth in paragraph 42.

## GENERAL FACTS AS TO PLAINTIFFS

43.    Plaintiffs among others were offered early buy-out severance packages. Plaintiffs turned down the early buyout severance packages and continued employment with

Defendant. Thereafter, they were targeted by Defendant and retaliated against.

**ANSWER:**   Defendants admit that all Store Directors, including Plaintiffs, were offered the opportunity to receive an enhanced buy-out package under the Voluntary Resignation Plan in early 2011.  Defendants admit that Plaintiffs did not request a buy-out package and continued to be employed with Defendants.  Defendants deny the remaining allegations set forth in paragraph 43.

44.    Prior to April of 2011, each of Defendant's stores had one (1) Store Director overseeing food and other related product operations, and a separate Store Director overseeing drug and other related product operations (hereafter "dual-director" stores).

**ANSWER:**   Defendants admit that prior to April 2011, most of Defendants' stores employed two store directors at each location, one overseeing the Jewel side of the business and one overseeing the Osco side of the business.  Defendants deny the remaining allegations in paragraph 44.

45.    Before April of 2011, Plaintiffs, LaRocco and Lee were each employed by Defendant as Osco Store Directors overseeing and responsible for the drug operation.  Plaintiffs, Cesario, Cieslak, Anderson, Nelson and Esboldt were employed by Defendant as a Jewel Store Director overseeing and responsible for the food operation.

**ANSWER:**   Defendants admit that before April 2011, while employed as store directors, LaRocco and Lee were employed as Store Directors responsible for the Osco side of the business, and that Cesario, Cieslak, Anderson, Nelson and Esboldt were employed as Store Directors responsible for the Jewel side of the business.  Defendants deny the remaining allegations set forth in paragraph 45.

46.    By April of 2011, Defendant had consolidated its store management structure and moved from dual-director stores to a single-director store format.

**ANSWER:**   Defendants admit that by the end of April 2011, they had consolidated the majority of its store management from dual-director stores to a single-director store format. Defendants deny the remaining allegations set forth in paragraph 46.

47.     After April of 2011, Plaintiffs, LaRocco and Lee were transferred from the position of Osco Store Director at Osco Drug, to the position of Store Director at Jewel-Osco, including both food and drug operations.

**ANSWER:**     Defendants admit that after April 2011, Plaintiffs LaRocco and Lee were transferred from the position of only being responsible for the Osco side of the business within their assigned store to being responsible for both the Jewel and Osco side of the businesses within their assigned stores.  Defendants deny the remaining allegations set forth in paragraph 47.

48.     After April 2011, Plaintiffs, Cieslak, Cesario, Anderson, Esboldt and Nelson were transferred from the position of Food Store Director at Jewel, to Store Director at Jewel-Osco, which included both food and drug operations.

**ANSWER:**     Defendants admit that after April 2011, Plaintiffs Cieslak, Cesario, Anderson, Esboldt and Nelson were transferred from the position of only being responsible for the Jewel side of the business within their assigned store to being responsible for both the Jewel and Osco side of the businesses within their assigned stores.  Defendants deny the remaining allegations set forth in paragraph 48.

49.     In April 2011, when Defendant transferred Plaintiffs to their respective Store Director positions, Defendant failed to train them and/or provided them insufficient training in the branch of the store (Osco Drug or alternatively Jewel Foods, as the case may be) with which they were not specifically familiar or experienced.

**ANSWER:**     Defendants deny paragraph 49.

50.     In or around April 2013, District Manager, Dave Negron ("Negron"), stated at a district meeting that Defendant did not "view *tenure* [code for age] as a good thing".

**ANSWER:**     Defendants deny paragraph 50.

51.     In or around June/July 2011, Steven DeSantiago stated at a district meeting "people with *longevity* [code for age] are not considered necessarily valued by the company".

**ANSWER:**     Defendants deny paragraph 51.

52.     During the Plaintiffs' respective tenure as Store Directors of Defendant, Plaintiffs met and/or exceeded the legitimate expectations of Defendant, but it was never enough.

**ANSWER:** Defendants deny paragraph 52.

53. After April 2011, Plaintiffs were transferred to stores that were failing and underperforming.

**ANSWER:** Defendants deny paragraph 53.

54. After arriving at these failing and underperforming stores, Plaintiffs were subjected to heightened scrutiny, excessive micromanaging, criticism, reprimands and abusive language, and required to work excessive hours by their District Managers and/or Vice President, including for minor flaws that had never been an issue.

**ANSWER:** Defendants deny paragraph 54.

55. Despite making substantial store improvements and contributions, Plaintiffs received constant criticisms, write-ups and unwarranted negative performance reviews by their District Managers, many of whom were more than ten (10) years their junior.

**ANSWER:** Defendants deny paragraph 55.

56. As a result of unwarranted negative performance reviews, Defendant denied Plaintiffs the opportunities for promotion, transfer and/or bonuses.

**ANSWER:** Defendants deny paragraph 56.

57. Instead, Defendant also increased Plaintiffs' responsibilities without providing increased support staff.

**ANSWER:** Defendants deny paragraph 57.

58. Plaintiffs' District Managers also made comments related to their age, as well as subjected Plaintiffs to threats, warnings and intimidation about the prospect of job loss if there was lack of improvement.

**ANSWER:** Defendants deny paragraph 58.

59. Other, similarly-situated store directors under the age of forty (40) or at least ten (10) years younger than the youngest Plaintiff: 1) were not criticized and/or reprimanded for the same issues in their stores or at least not to the same degree; 2) were transferred to better performing stores; 3) were offered support staff to assist with increased responsibilities; and 4) were not given negative performance reviews for issues that Plaintiffs were criticized and/or reprimanded for, or at least not to the same degree.

**ANSWER:** Defendants deny paragraph 59.

60. During Plaintiffs' thirty plus years of service, Store Directors were always given the opportunity to step-down to an Assistant Director position or transferred instead of being

terminated. Plaintiffs, LaRocco and Lee, were terminated without being given the opportunity to choose a demotion to assistant manager or to be transferred to a different store.

**ANSWER:** Defendants deny paragraph 60.

61.     Defendant systematically discriminated against and harassed Plaintiffs on the basis of their age and/or retaliated against Plaintiffs for engaging in statutorily protected activity by making internal complaints to Defendant and/or the EEOC for discrimination, harassment and/or retaliation.

**ANSWER:** Defendants deny paragraph 61.

### INDIVIDUAL FACTS: CESARIO

62.     Cesario restates and realleges paragraphs one through sixty-one (1-61) as if fully stated herein as paragraph sixty-two (62).

**ANSWER:** Defendants restate their answers to paragraphs one through sixty-one (1-61) as if fully stated herein as paragraph sixty-two (62).

63.     In or around April 1980, Defendant hired Cesario as a part-time Clerk at store #550, located in Glen Ellyn, Illinois.

**ANSWER:** Defendants deny paragraph 63.

64.     During Cesario's thirty-six (36) year career with Defendant, he progressed within the company and was promoted to Store Director at store #114, located in Wheaton, Illinois.

**ANSWER:** Defendant admits that during Cesario's tenure he worked as a Store Director in various locations.  Defendants deny the remaining allegations set forth in paragraph 64.

65.     On or around September 19, 2010, Defendant transferred Cesario to store #3278, located in Lombard, Illinois, wherein he was to report to District Manager, Brian Finnegan.

**ANSWER:** Defendants admit that on or about September 19, 2010 Cesario was transferred to store #3278 located in Lombard, Illinois wherein reported to District Manager, Ron Harris.  Defendants deny the remaining allegations set forth in paragraph 65.

66.     From and after September 19, 2010, Cesario reported to the following District Managers: 1) Brian Finnegan; 2) Mark Laryea; 3) David Negron; and 4) Aquanetta Dawson.

**ANSWER:** Defendants admits that during the time period of approximately

September 19, 2010, Cesario reported to five separate District Managers including Aquanetta Dawson, Ron Harris, Brian Finnegan, and Mark Laryea. Defendants deny the remaining allegations set forth in paragraph 66.

67. Cesario was never offered a severance package pursuant to Defendant's RIF.

**ANSWER:** Defendants admits that Cesario, as well as all store directors, was eligible to volunteer for an enhanced associate buyout package under the Jewel-Osco Store Director Voluntary Resignation Plan in early 2011. Defendants deny the remaining allegations of paragraph 67.

68. On or around November 11, 2014, District Manager, Brian Finnegan ("Finnegan"), gave Cesario a performance rating of 4 SP (Consistently Meets Expectations; Satisfactorily Placed).

**ANSWER:** Defendants admit paragraph 68.

69. Shortly after November 11, 2014, Mark Laryea ("Laryea") replaced Finnegan as District Manager. Cesario was to then report to Laryea.

**ANSWER:** Defendants admit paragraph 69.

70. In the weeks leading up to December 15, 2014, Laryea placed Cesario under heightened and intense scrutiny, including visiting his store at least once a week to give criticisms and reprimands for minor flaws and issues that had never been an issue throughout Cesario's career.

**ANSWER:** Defendants deny paragraph 70.

71. During this same time, Laryea assigned Cesario the monumental task of revamping the produce department within one (1) week.

**ANSWER:** Defendants deny paragraph 71.

72. When Cesario asked for assistance as had been given to other younger Store Directors during other store projects, Laryea denied Cesario's request and told him it was "[his] problem".

**ANSWER:** Defendants deny paragraph 72.

73. During the produce department revamp, Laryea completely changed directions of the project and required Cesario to completely re-do the project with the same end date and no

additional assistance.

**ANSWER:** Defendants deny paragraph 73.

74. As a result of the stress caused by Laryea, Cesario had an accident, which caused him to go on a medical leave of absence commencing on or around December 15, 2014.

**ANSWER:** Defendants admit that Cesario began a medical related leave of absence on

December 15, 2014. Defendants deny the remaining allegations set forth in paragraph 74.

75. On or around December 29, 2015, Cesario's physician released him to go back to work with temporary restrictions until January 15, 2015.

**ANSWER:** Defendants admit paragraph 75.

76. On or around January 3, 2015, Cesario returned to work from his medical leave of absence.

**ANSWER:** Defendants admit paragraph 76.

77. On or around January 12, 2015, Cesario received his quarter two and quarter three performance reviews of 3 SP (Consistently Meets Expectations; Satisfactorily Placed) and 3 NP (Consistently Meets Expectations; Not Promotable). As a result of the latter performance review, Cesario was denied the opportunity to be promoted.

**ANSWER:** Defendants deny that Cesario was ever "denied the opportunity to be

promoted" because he already held the highest position within the store and did not seek or apply

for any promotion opportunities. Defendants admit the remaining allegations set forth in

paragraph 77.

78. Despite Cesario's positive quarter two and quarter three performance reviews, Laryea and now Michael Withers ("Withers"), President of Jewel, increased their scrutiny even more of Cesario. For example, during a store inspection in early 2015, Withers and Laryea criticized and reprimanded Cesario for apple cores not being in perfect alignment.

**ANSWER:** Defendants deny paragraph 78.

79. In the three weeks leading up to April 21, 2015, Laryea and Withers visited Cesario's store approximately 6-7 times, separately.

**ANSWER:** Defendants admit that Mr. Withers lived near Cesario's store and visited

the store on regular basis during this time. Defendants admit that during this time Laryea had

performance concerns regarding Cesario's store and visited regularly. Defendants deny the remaining allegations set forth in paragraph 79.

80.     During the same months, Cesario made a request for a transfer on two (2) separate occasions to Laryea. On those occasions, Laryea repeatedly asked Cesario "what [he should] do with [him]?" and that he felt the "store [was] too big for [him] to handle". In response, Cesario informed Laryea that he had superseded the company's expectations in regards to Earnings. Cesario further informed him that he not only had delivered those numbers for a 100% quarterly payout, but in four (4) out of the five (5) quarters, he doubled the pay to 200%. When Laryea responded that was not good enough, Cesario requested a transfer to another store and/or another store outside of the district that was smaller and/or closer to his home. Laryea immediately denied his request, stating, "that [was] not going to happen". Laryea even asked Cesario how much longer he intended on working with the company.

**ANSWER:**     Defendants deny paragraph 80.

81.     Despite denying Cesario's requests for a transfer, Laryea transferred another younger Store Director, who had had issues with the store and was given assistance by Laryea.

**ANSWER:**     Defendants deny paragraph 81.

82.     On or around April 21, 2015, Cesario went on a medical leave of absence caused solely by the stress that Laryea and Withers had subjected him to in the preceding months.

**ANSWER:**     Defendants admit that on approximately April 21, 2015 Cesario began a medical leave of absence. Defendants deny the remaining allegations set forth in paragraph 82.

83.     When Cesario left store #3278 on or around April 21, 2015, Defendant replaced him with a much younger Store Director. On information and belief, Laryea gave him no restrictions in regards to backroom conditions, labor, earnings, etc. Despite this younger Store Director missing all line and bottom line numbers, Defendant promoted him approximately two quarters later to Operations Specialist of Produce.

**ANSWER:**     Defendants deny paragraph 83.

84.     Cesario worked as a Store Director for Defendant at #3278, located in Lombard, Illinois.

**ANSWER:**     Defendants admit that during the relevant period, Cesario worked as a Store Director for Defendants at Store #3278 in Lombard, Illinois.

85.     At all times relevant, Cesario performed his job at and above a satisfactory manner and to the legitimate expectations of Defendant, consistently receiving good performance reviews.

**ANSWER:**     Defendants deny paragraph 85.

## INDIVIDUAL FACTS: CIESLAK

86.     Cieslak restates and realleges paragraphs one through sixty-one (1-61) as if fully stated herein as paragraph eighty-six (86).

**ANSWER:**     Defendants restate their answers to paragraphs one through sixty-one (1-61) as if fully stated herein as paragraph eighty-six (86).

87.     In or around September 1976, Defendant hired Cieslak as a Bagger at store #4540, located in Chicago, Illinois.

**ANSWER:**     Defendants admit paragraph 87.

88.     In or around April 2007, Defendant promoted Cieslak to Jewel Store Director at store #3033, located in Chicago, Illinois overseeing and responsible for the food operation.

**ANSWER:**     Defendants admit that Cieslak was promoted to the position of Store Director on or about April 22, 2007 at Store # 3232.  Defendants deny the remaining allegations set forth in paragraph 88.

89.     Around April 2011, Cieslak was offered a severance package pursuant to Defendant's RIF. Cieslak turned down the severance package, deciding to remain employed by Defendant.

**ANSWER:**     Defendants admit that all Store Directors, including Cieslak, were offered the opportunity to receive an enhanced buy-out package under the Voluntary Resignation Plan in early 2011.  Defendants admit that Cieslak did not request a buy-out package and continued to be employed with Defendants.  Defendants deny the remaining allegations set forth in paragraph 89.

90.     Cieslak then was transferred as a Store Director for Defendant at store #3302, located in Chicago, Illinois and then was transferred to store #3236, located in Oak Park, Illinois.

**ANSWER:**     Defendants admit paragraph 90.

91.     At all times relevant, Cieslak performed his job in a satisfactory manner and to the legitimate expectations of Defendant, consistently receiving good performance reviews.

**ANSWER:**     Defendants deny paragraph 91.

92.     In or after April 2011, Defendant transferred Cieslak to store #3302, located in Chicago, Illinois, wherein Cieslak was to report to District Manager, Dave Negron ("Negron").

**ANSWER:**     Defendants admit paragraph 92.

93.     Once transferred to store #3302, Cieslak was informed by the former South Area Vice President, Bill Stark ("Stark") that he had been hand-selected by Stark personally to help in the "loss district" to turn store #3302 around.

**ANSWER:**     Defendants deny paragraph 93.

94.     In 2010, store #3302 lost approximately $1.4 million dollars and has lost similar numbers for several consecutive years dating back to the mid-2000's.

**ANSWER:**     Defendants deny paragraph 94.

95.     Stark promised Cieslak that due to the challenges of #3302 being a loss store, Cieslak would not be left at the store #3302 for more than a year, the best available shop managers would be transferred in, and he would have carte blanche to run the store outside the constraints of normal corporate directives to turn the store around. Despite Stark's promises, Defendant never fulfilled any of its promises to Cieslak.

**ANSWER:**     Defendants deny paragraph 95.

96.     From and after April 2011 to the present, Cieslak reported to three (3) District Managers, including: 1) Dave Negron; 2) Steven DeSantiago; and 3) Mark Laryea. During this time, Cieslak has not only been set up to fail by Defendant, he has also been subjected to threats and warnings regarding losing his job, intimidation, harassment, retaliation for making complaints to Defendant and the EEOC regarding age discrimination, harassment and retaliation from his District Manager(s). Cieslak's District Managers also made comments related to Cieslak's age.

**ANSWER:**     Defendants admit that from and after April 2011, Cieslak has reported to

District Managers Dave Negron, Steven DeSantiago, and Mark Laryea. Defendants deny the

remaining allegations set forth in paragraph 96.

97.     When Cieslak arrived to store #3302, it was one of the worst performing stores in the district. Despite Stark's empty promises, Cieslak was still able to cut the earnings loss by over fifty (50) percent in 2011.

**ANSWER:**     Defendants deny paragraph 97.

98.     Despite Cieslak outstanding performance, in 2013, District Manager DeSantiago began criticizing and reprimanding Cieslak for minor store issues and flaws that were never before at issue. These issues were universal in all stores. Other similarly-situated Store Directors

under the age of forty (40) or more than ten (10) years younger than him were not criticized or reprimanded for the same issues in their stores.

    **ANSWER:**    Defendants deny paragraph 98.

    99.    From and after 2013 Cieslak began to recognize that he was being treated differently from younger Store Directors. This treatment included, but was not limited to, the younger Store Directors: 1) not being criticized and reprimanded for minor store issues and flaws that were at issue in Cieslak's stores; 2) not being given negative performance reviews; 3) not being threatened with the loss of their jobs; 4) not being forced to remain in underperforming stores.

    **ANSWER:**    Defendants deny paragraph 99.

    100.    In or around late 2013-early 2014, DeSantiago transferred to Cieslak an Assistant Store Director, whom had been rated a two (2) at her previous store and came to Cieslak's store with several work restrictions, including but not limited to, a three (3) day work-week and a fifteen- pound lifting restriction. At one point, the Assistant Store Director went on a medical leave of absence for four to five (4-5) months, with no support given to Cieslak by DeSantiago.

    **ANSWER:**    Defendants deny paragraph 100.

    101.    In or around October 2014, Cieslak first requested a transfer from District Manager Laryea after he received a rating of 3 SP (Consistently Meets Expectations; Satisfactorily Placed). During that conversation, Cieslak stressed to Laryea Defendant was discriminating against him based on his age in the he was being left at store #3302, a loss store, without the opportunity to transfer. Laryea denied Cieslak's request for a transfer, informing him that he would only be transferred if Cieslak could make the earnings numbers. Laryea controlled the earnings numbers and the earnings goals in placed by Laryea were unattainable given the earnings history of the store, new competition, and six (6) months of road construction that impacted the earnings numbers. When Cieslak requested a budget adjustment to sales and labor due to the road construction, Laryea denied his request. Thereafter, Cieslak continued to be budgeted payroll goals several thousands of dollars under guaranteed contract minimums.

    **ANSWER:**    Defendants admit that Cieslak requested and was provided a transfer to Store 3236, located in Oak Park, Illinois in order to be closer to his home and to give him an opportunity to show improvement in a new setting. Defendants deny the remaining allegations set forth in paragraph 101.

    102.    Defendant's stores that were expecting an incoming Mariano's into the neighborhood were given the best available associates, were remodeled and became part of the elite "Blackhawk" district. This was to combat the anticipated sales losses and to retain customers. When a Mariano's was due to come into Cieslak's store's neighborhood, and even after, Defendant offered none of these to Cieslak. District Manager DeSantiago, and later District

Manager Laryea, denied Cieslak's request to have the façade of the store painted to give the store a fresh look.

**ANSWER:**    Defendants deny paragraph 102.

103.    Despite Cieslak's multiple requests to be transferred, Cieslak remained at store #3302 for over four (4) years, while Defendant transferred at least six (6) younger, less experienced Store Directors.

**ANSWER:**    Defendants deny paragraph 103.

104.    In or around November 2014, Cieslak again orally complained to Laryea regarding discrimination he felt Defendant was subjecting him to based upon his age.

**ANSWER:**    Defendants deny paragraph 104.

105.    On or around January 26, 2015, Cieslak presented Rebecca Young, Human Resources Lead, a formal written complaint regarding the discrimination and harassment Defendant had been subjecting him to on the basis of his age.

**ANSWER:**    Defendants that on January 26, 2015 admit paragraph 105.

106.    On around January 26, 2015, Cieslak was given his first of several subsequent negative performance reviews and deemed "not promotable" by District Manager Laryea. On that date, Laryea rated Cieslak a 2 NP (Partially Meets Expectations, Not Promotable) for his third quarter performance evaluation, and subsequently placed Cieslak on a Performance Improvement Plan ("PIP").

**ANSWER:**    Defendants admit that on January 26, 2015, prior to submitting a formal complaint to Rebecca Young, Cieslak was given a 2 NP (Partially Meets, Not Promotable) for his third quarter performance review and was subsequently placed on a Performance Improvement Plant ("PIP").  Defendants deny the remaining allegations set forth in paragraph 106.

107.    In or around May 2015, Cieslak received a second negative performance review. Laryea warned Cieslak that his job was in jeopardy if he did not significantly improve.

**ANSWER:**    Defendants admit that on May 8, 2015, Cieslak was issued a 1 NP (Unacceptable, Not Promotable) performance review, and Defendants admit that Laryea expressed that serious improvement was required or he could face termination.  Defendants deny

the remaining allegations set forth in paragraph 107.

108.    On or around June 8, 2015, District Manager Laryea approached Cieslak's subordinates and Union Representative seeking negative information regarding Cieslak.

**ANSWER:**    Defendants deny paragraph 108.

109.    On or around June 26, 2015, Cieslak filed his initial Charge of Discrimination with the EEOC.

**ANSWER:**    Defendants admit paragraph 109.

110.    In retaliation for filing a Charge of Discrimination with the EEOC, on or around July 27, 2015, Defendant transferred Cieslak to store #3236, located in Oak Park, Illinois. Store #3236 was and is the smallest volume store in District 8. Store #3236 has a sales volume of at least $140,000 less than Cieslak's prior store, store #3302. In addition, store #3236 was not up to "company standards" but was left unchecked by Laryea, as there was no action taken against prior, younger Store Director, Hollie Abernathy (early 40's).

**ANSWER:**    Defendants deny paragraph 110.

111.    On or around December 14, 2015, Cieslak filed his Amended Charge of Discrimination with the EEOC.

**ANSWER:**    Defendants admit that on December 18, 2015, Cieslak filed an Amended

Charge of Discrimination with the EEOC.  Defendants deny the remaining allegations set forth

in paragraph 111.

112.    In or around February 2016, Defendant replaced Cieslak's Assistant Store Director, with another Assistant Store Director, who was out on a medical leave of absence thereby giving Cieslak no assistance to manage the store. Thereafter, it took Defendant approximately two (2) months to respond to Cieslak's complaints regarding a lack of an Assistant Store Director. In or around April 2016, Defendant finally responded to Cieslak's pleas for help when it transferred another Assistant Store Director to replace the Assistant Store Director on medical leave.

**ANSWER:**    Defendants deny paragraph 112.

113.    Cieslak is currently employed as Store Director at store #3236.

**ANSWER:**    Defendants admit paragraph 113.

114.    At all times relevant, Cieslak performed his job in a satisfactory manner and to the legitimate expectations of Defendant, consistently receiving good performance reviews.

**ANSWER:**     Defendants deny paragraph 114.

## INDIVIDUAL FACTS: LAROCCO

115.     LaRocco restates and realleges paragraphs one through sixty-one (1-61) as if fully stated herein as paragraph one-hundred-fifteen (115).

**ANSWER:**     Defendants restate their answers to paragraphs one through sixty-one (1-61) as if fully stated herein as paragraph one hundred-fifteen (115).

116.     On or around January 9, 1978, Defendant hired LaRocco as a Manager Trainee.

**ANSWER:**     Defendants admit that LaRocco was hired on January 9, 1978 as an Osco Store Director.  Defendants deny the remaining allegations set forth in paragraph 116.

117.     On or around 1983, Defendant promoted LaRocco to Osco Drug Store Director at store #664, located in Wheaton, Illinois.

**ANSWER:**     Defendants admit paragraph 117.

118.     In or around April 2011, LaRocco was offered a severance package pursuant to Defendant's RIF. LaRocco turned down the severance package, deciding to remain employed by Defendant.

**ANSWER:**     Defendants admit that all Store Directors, including LaRocco, were offered the opportunity to receive an enhanced buy-out package under the Voluntary Resignation Plan in early 2011.  Defendants admit that LaRocco did not request a buy-out package and continued to be employed with Defendants.  Defendants deny the remaining allegations set forth in paragraph 118.

119.     In or around April 2011, Defendant transferred LaRocco to store #3284, located in Villa Park, Illinois, wherein LaRocco was to report to District Manager, Brad Boyle ("Boyle").

**ANSWER:**     Defendants admit paragraph 119.

120.     Once transferred to store #3284, LaRocco oversaw it as it went through a major remodel, and was later praised by District Manager Boyle because it had been the easiest remodel he had overseen since becoming a District Manager due to LaRocco's leadership.

**ANSWER:**     Defendants admit that Store 3284 underwent a remodel and LaRocco was

complimented for his role in the remodel. Defendants deny the remaining allegations set forth in

paragraph 120.

121.     On or around January 13, 2013, Defendant transferred LaRocco to store #3272, located in DeKalb, Illinois. LaRocco worked at store #3272 until his termination on or around August 17, 2015.

**ANSWER:**     Defendants admit paragraph 121.

122.     When LaRocco arrived to store #3272, it was one of the worst performing stores in the district. Despite the poor and failing conditions of store #3272 that LaRocco inherited, LaRocco was able to earn approximately $600,000.00 more in 2014 and 2015 than it had in 2013.

**ANSWER:**     Defendants deny paragraph 122.

123.     Despite LaRocco's outstanding performance, in June 2014, District Manager Romanello began criticizing and reprimanding LaRocco for minor store issues and flaws that were never before at issue. These issues were universal in all stores. Other similarly-situated Store Directors under the age of forty (40) or more than ten (10) years younger than him were not criticized or reprimanded for the same issues in their stores.

**ANSWER:**     Defendants deny paragraph 123.

124.     At all relevant times, LaRocco worked as a Store Director for Defendant at store # 3272, located in DeKalb, Illinois.

**ANSWER:**     Defendants admit paragraph 124.

125.     At all times relevant, LaRocco performed his job in a satisfactory manner and to the legitimate expectations of Defendant, consistently receiving good performance reviews.

**ANSWER:**     Defendants deny paragraph 125.

126.     From and after January 2013 until his termination on or around August 17, 2015, LaRocco reported to District Manager, Phillip Romanello ("Romanello"). During this time, LaRocco had not only been set up to fail by Defendant, he has also been subjected to threats and warnings regarding losing his job, intimidation, harassment, retaliation for making complaints to Defendant and the EEOC regarding age discrimination, harassment and retaliation from his District Manager.

**ANSWER:**     Defendants admit that from approximately November 2013 until his

termination on or around August 17, 2015 LaRocco reported to District Manager, Phillip

Romanello. Defendants deny the remaining allegations set forth in paragraph 126.

127.    From and after June 2014, LaRocco began to recognize that he was being treated differently from younger Store Directors. This treatment included, but was not limited to, the younger Store Directors: 1) not being criticized and reprimanded for minor store issues and flaws that were at issue in LaRocco's stores; 2) not being given negative performance reviews; 3) not being threatened with the loss of their jobs; 4) not being forced to remain in underperforming stores.

**ANSWER:**    Defendants deny the allegations set forth in paragraph 127.

128.    In addition, District Manager Romanello aided younger Store Directors who were having performance issues by sending in his team of Operational Specialists to assist the Store Directors. If LaRocco was having such performance issues, no such assistance was provided to LaRocco.

**ANSWER:**    Defendants deny the allegations set forth in paragraph 128.

129.    On around June 30, 2014, LaRocco was given his first of several subsequent negative performance reviews and deemed "not promotable" by District Manager Romanello. On that date, Romanello rated LaRocco a 2 NP (Partially Meets Expectations, Not Promotable).

**ANSWER:**    Defendants admit that on June 30, 2014, LaRocco was issued a 2 NP (Partially Meets Expectations, Not Promotable) performance review by District Manager Romanello.  Defendants deny the remaining allegations set forth in paragraph 129.

130.    On or around October 21, 2014, Romanello gave LaRocco a second unwarranted, negative performance review. Romanello warned LaRocco that his job was in jeopardy if he did not significantly improve.

**ANSWER:**    Defendants admit on October 21, 2014, Romanello issued LaRocco a quarterly performance review of a 2 NP.  Defendants deny the remaining allegations set forth in paragraph 130.

131.    On or around May 29, 2015, Romanello gave LaRocco another unwarranted, negative performance review, rating him a 1 NP (Unacceptable, Not Promotable).

**ANSWER:**    Defendants admit that on May 29, 2015, Romanello issued LaRocco a quarterly performance review of 1 NP (Unacceptable, Not Promotable).  Defendants deny the remaining allegations set forth in paragraph 131.

132.    On or around June 29, 2015, LaRocco made a formal, written complaint against Romanello based on him discriminating against and intimidating LaRocco.

**ANSWER:**    Defendants deny paragraph 132.

133.    On or around August 6, 2015, LaRocco filed a Charge of Discrimination with the EEOC against Defendant based on age discrimination and/or harassment he had been subjected to during his employment.

**ANSWER:**    Defendants admit that on August 6, 2015, LaRocco filed a Charge of Discrimination with the EEOC against Jewel Foods alleging age discrimination and retaliation during his employment.  Defendants deny the remaining allegations set forth in paragraph 133.

134.    In retaliation for filing a Charge of Discrimination with the EEOC and his internal complaints to Defendant regarding age discrimination and harassment, on or around August 17, 2015, Romanello gave LaRocco another unwarranted, negative performance review, rating him a 1 NP (Unacceptable, Not Promotable).

**ANSWER:**    Defendants admit that on August 17, 2015 Romanello issued LaRocco a quarterly performance review of a 1 NP (Unacceptable, Not Promotable).  Defendants deny the remaining allegations set forth in paragraph 134.

135.    On or around August 17, 2015, Defendant terminated LaRocco's employment.

**ANSWER:**    Defendants admit paragraph 135.

## INDIVIDUAL FACTS: LEE

136.    Lee restates and realleges paragraphs one through sixty-one (1-61) as if fully stated herein as paragraph one-hundred-thirty-six (136).

**ANSWER:**    Defendants restate their answers to paragraphs one through sixty-one (1-61) as if fully stated herein as paragraph one hundred-thirty-six (136).

137.    On or around June 4, 1979, Defendant hired Lee as a Manager Trainee.

**ANSWER:**    Defendants admit paragraph 137.

138.    On or around August 1984, Defendant promoted Lee to Osco Drug Store Director at store #123, located in Chicago, Illinois.

**ANSWER:**    Defendants admit paragraph 138.

139.    In or around April 2011, Lee was offered a severance package pursuant to Defendant's RIF. Lee turned down the severance package, deciding to remain employed by

Defendant.

**ANSWER:**    Defendants admit that all Store Directors, including Lee, were offered the opportunity to receive an enhanced buy-out package under the Voluntary Resignation Plan in early 2011.  Defendants admit that Lee did not request a buy-out package and continued to be employed with Defendants.  Defendants deny the remaining allegations set forth in paragraph 139.

140.    In or around April 2011, Defendant transferred Lee to Store Director, wherein Lee was to oversee and be responsible for the food operations of Defendant.

**ANSWER:**    Defendants admit that on April 10, 2011, Lee was transferred to the positon of Store Director for the Jewel side of the business at Store #3288.  Defendants deny the remaining allegations set forth in paragraph 140.

141.    From and after April 2011, Lee reported to the following District Managers: 1) Aquanetta Dawson; 2) Ron Harris; 3) Dave Negron; 4) Steve DeSantiago; 5) Mark Laryea and 6) Abram Ruiz.

**ANSWER:**    Defendants admit that from April 2011 and thereafter, Lee reported to District Managers Dawson, Harris, DeSantiago, Laryea, and Ruiz for various periods of time. Defendants deny the remaining allegations set forth in paragraph 141.

142.    In the months after April 2011, Defendant sent out large training materials to all Store Directors, including Lee. There were no training sessions for the manuals that were sent out.

**ANSWER:**    Defendants admit that on or around April 2011, all store directors who moved into single store director formats were sent training materials.  Defendants deny the remaining allegations set forth in paragraph 142.

143.    District Manager, Aquanetta Dawson ("Dawson"), was to have reviewed and tested the training material with Lee. She failed to do so.

**ANSWER:**    Defendants deny the allegations set forth in paragraph 143.

144.    Thereafter, Defendant sent Lee numerous emails requiring him to sign off on the

training materials that he had received but was not trained in. Lee informed Defendant that he would not sign off on the training material because he never received the training by District Manager Dawson.

**ANSWER:** Defendants deny the allegations set forth in paragraph 144.

145. In or around April 2011, Defendant transferred Lee to store #3288, located in Oak Park, Illinois.

**ANSWER:** Defendants admit paragraph 145.

146. At the time Defendant had transferred Lee to store #3288, the store had been underperforming and failing, and had been unprofitable for several years. Despite the store's obstacles, Lee was able to substantially improve sales earnings and customer service scores.

**ANSWER:** Defendants deny paragraph 146.

147. In or around August 2012, Defendant transferred Lee to store #3097, located in Downers Grove, Illinois. During Lee's tenure at store #3097, he increases earnings and received positive performance reviews and bonuses as a result.

**ANSWER:** Defendants admit that on July 29, 2012, Lee transferred to store #3097, located in Downers Grove, Illinois. Defendants deny the remaining allegations set forth in paragraph 147.

148. In or around February 2014, DeSantiago transferred Lee to store #3170, located in Chicago, Illinois. Lee remained at store #3170 until his constructive discharge on or around March 28, 2015.

**ANSWER:** Defendants admit that on January 26, 2014, Lee transferred to store #3170 in Chicago, Illinois and that this was the last store Lee was assigned until his resignation on March 28, 2015. Defendants deny the remaining allegations set forth in paragraph 148.

149. At the time Defendant had transferred Lee to store #3170, the store had been running without a Store Director for approximately 6-8 months, had been underperforming and failing, and had been unprofitable for several years.

**ANSWER:** Defendants deny paragraph 149.

150. In or around April 2014, DeSantiago removed Lee's Assistant Store Director and placed him in a top five (5) performing store and replaced him with an Assistant Store Director who only had approximately six (6) months of experience.

**ANSWER:**     Defendants deny paragraph 150.

151.     On or around June 6, 2014, District Manager, Ron Harris ("Harris") gave Lee his annual performance reviews for 2012 and 2013, receiving a rating of 4 SP (Consistently Meets and Often Exceeds Expectations, Satisfactorily Placed) and a rating of 3 SP (Consistently Meets Expectations, Satisfactorily Placed), respectively.

**ANSWER:**     Defendants deny paragraph 151.

152.     Because Lee was rated a 3 SP (Consistently Meets Expectations, Satisfactorily Placed), he was due and owed a bonus of $1,500.00 on or around June 5, 2014.

**ANSWER:**     Defendants deny paragraph 152.

153.     On or around June 16, 2014, Lee went on a medical leave of absence.

**ANSWER:**     Defendants admit paragraph 153.

154.     On or around July 20, 2014, Lee returned from his medical leave of absence.

**ANSWER:**     Defendants admit paragraph 154.

155.     From and after July 2014, Lee began to recognize that he was being treated differently from younger Store Directors by District Manager DeSantiago. This treatment included, but was not limited to, the younger Store Directors: 1) not being criticized and reprimanded for minor store issues and flaws that were at issue in Lee's stores; and 2) not being given negative performance reviews.

**ANSWER:**     Defendants deny paragraph 155.

156.     Upon Lee's return, Lee notified his new District Manager Laryea on three separate occasions that he was due and owed a bonus from his June 6, 2013 annual performance review rating. On each occasion, Laryea informed Lee that: 1) he would have to get back to Lee regarding his request; 2) he had forgotten to inquire regarding the bonus; and 3) Lee would not receive his bonus because his performance rating was instantaneously and retroactively being lowered from a 3 to a 2.

**ANSWER:**     Defendants deny paragraph 156.

157.     On or around July 25, 2014, five (5) days after returning from medical leave for over thirty (30) days, Laryea arrived at the store and took Lee into Lee's office.

**ANSWER:**     Defendants admit that upon returning from leave, Laryea met with Lee at his store, as he does with all Store Directors in his district.  Defendants deny the remaining allegations set forth in paragraph 157.

158.     In Lee's office, Laryea asked Lee what he was going to do to fix the poor store conditions. When Lee responded that he has just returned to work from a thirty (30) day medical leave of absence with a forty (40) hour work-week restriction, Laryea replied that it would be difficult for Lee and told Lee to quit his job and/or retire to make it easy on himself. When Lee responded that he could not make that decision at the moment, as he needed to speak to his wife first, Laryea slid his cell phone across the table to Lee and asked Lee to call his wife then and there.

**ANSWER:**     Defendants deny paragraph 158.

159.     Laryea was aware of Lee's work restrictions in place by Lee's physician.

**ANSWER:**     Defendants admit paragraph 159.

160.     Nonetheless, Laryea failed to accommodate Lee's disability by forcing Lee to stay late on several occasions, wherein Laryea would berate, humiliate and harass Lee.

**ANSWER:**     Defendants deny paragraph 160.

161.     On or around August 14, 2014, Lee was given his first negative performance review rating of 2 NP (Partially Meets Expectations, Not Promotable) and deemed "not promotable" by District Manager Laryea.

**ANSWER:**     Defendants admit that on August 14, 2014, Laryea issued Lee a

performance rating of 2 NP (Partially Meets Expectations, Not Promotable).  Defendants deny

the remaining allegations set forth in paragraph 161.

162.     On or around August 23, 2014, Laryea asked Lee what he was doing in response to the poor work conditions, Lee responded that it was difficult to keep up due to the forty (40) hour work-week restriction in place, and that his Assistant Store Director had been on vacation. Laryea then told Lee that when Laryea returned, Lee had to give him an answer about what Lee was going to do. Laryea again indicated that Lee should quit or retire from his position as Store Director.

**ANSWER:**     Defendants deny paragraph 162.

163.     On or around September 23, 2014, Lee again went on a medical leave of absence.

**ANSWER:**     Defendants admit paragraph 163.

164.     On or around January 4, 2015, Lee returned to work from his medical leave of absence.

**ANSWER:**     Defendants admit paragraph 164.

165.    On or around January 6, 2015, when Operations Specialist Jerry Rifenbark ("Rifenbark") visited Lee's store, Rifenbark asked Lee "how many more years are you going to work?"

**ANSWER:**    Defendants deny paragraph 165.

166.    On or around January 8, 2015, Lee sent an email to Defendant complaining of harassment and discrimination by District Manager Laryea, District Manager DeSantiago, and Operations Specialist Rifenbark.

**ANSWER:**    Defendants admit paragraph 166.

167.    When District Loss Prevention Manager, Robert Kelley ("Kelley"), interviewed Lee regarding his January 8, 2015 complaint, Kelley told Lee that "there was not much use in saying anything about [his] complaint about DeSantiago because he was no longer with the company." Kelley then urged Lee to withdraw his complaint against DeSantiago for that reason alone.

**ANSWER:**    Defendants deny paragraph 167.

168.    On or around March 28, 2015, Lee was constructively discharged from Defendant because the working conditions were so intolerable and/or unbearable that Lee could no longer work at Defendant.

**ANSWER:**    Defendants deny paragraph 168.

## INDIVIDUAL FACTS: ANDERSON

169.    Anderson restates and realleges paragraphs one through sixty-one (1-61) as if fully stated herein as paragraph one-hundred-sixty-nine (169).

**ANSWER:**    Defendants restate their answers to paragraphs one through sixty-one (1-61) as if fully stated herein as paragraph one hundred sixty-nine (169).

170.    In or around June 4, 1974, Defendant hired Anderson as a store bagger at the location at 2303 N. Clark Street in Chicago.  Two years later in 1976, Anderson was promoted from a part time to a full-time Clerk.  Anderson continued his employment with Defendant, working his way up from Clerk to Night Crew Chief to Assistant Grocery Manager to Assistant Store Director to the position of Store Director by 1989 at the 5467 W. Madison, Chicago store.

**ANSWER:**    Defendants admit paragraph 170.

171.    In December 1999, Anderson was selected to manage the opening of a new store at the 1655 East 95th Street, Chicago location.  The store opening was a big success under Anderson's leadership.

**ANSWER:**    Defendants deny paragraph 171.

172.    Anderson worked for Defendant as a store director at several locations before he was promoted again to Grocery Operations Specialist which was a two-year growth assignment. After that was completed, Anderson returned to the position of Store Director.  In February 2008, Anderson was promoted to District Manager.

**ANSWER:**    Defendants deny paragraph 172.

173.    Anderson held the position of District Manager until April 2011 in which he returned to the position of Store Director at the 1220 South Ashland, Chicago store #1220 under the supervision of District Manager Steve DeSantiago.  Anderson was told he was assigned that store because it was a historically underperforming store and Defendant thought with Anderson's leadership he could turn it around.

**ANSWER:**    Defendants deny paragraph 173.

174.    From and after April 2011, Anderson reported to the following District Managers: 1) Steve DeSantiago; 2) Diane Vonderheide; 3) Brad Boyle; and 4) Mark Laryea.

**ANSWER:**    Defendants admit paragraph 174.

175.    Anderson was offered a severance package pursuant to Defendant's RIF in March 2011 but did not accept it.

**ANSWER:**    Defendants admit that all Store Directors, including Anderson, were offered the opportunity to receive an enhanced buy-out package under the Voluntary Resignation Plan in early 2011.  Defendants admit that Anderson did not request a buy-out package and continued to be employed with Defendants.  Defendants deny the remaining allegations set forth in paragraph 175.

176.    In May 2012 and May 2013, District Manager, Steve DeSantiago ("DeSantiago"), gave Anderson a performance rating of 4 SP (Consistently Meets and often Exceeds Expectation; Satisfactorily Placed).

**ANSWER:**    Defendants admit paragraph 176.

177.    Beginning in May 2014, Anderson started receiving lower performance reviews for the first time in his thirty-eight-year career with Defendant. At around the same time, Defendant changed their performance metrics to penalize store directors that were at underperforming stores.

**ANSWER:**    Defendants admit that Anderson received a performance rating of 3 SP (Consistently Meets Expectations; Satisfactorily Placed) in May 2014.  Defendants deny the

remaining allegations set forth in paragraph 177.

178.     In May 2014, District Manager Diane Vonderheide gave Anderson a performance rating of 3 SP (Consistently Meets Expectation). The following year in 2015, performance ratings were given twice a year and District Manager Brad Boyle gave Anderson performance ratings of 3 SP (Consistently Meets Expectation) both times.

**ANSWER:**     Defendants admit paragraph 178.

179.     When Brad Boyle became Anderson's District Manager in July 2014, Anderson had an excellent Assistant Store Director. Brad Boyle moved that Assistant Store Director and replaced him with an Assistant Store Director with health problems including high obesity and breathing difficulties. When Anderson asked Brad Boyle why he was getting this new Assistant Store Director, Brad Boyle responded, "I'm sending him to you to get rid of him." Also stating, "with your expertise you could get him out of the business."

**ANSWER:**     Defendants deny paragraph 179.

180.     In 2016 performance ratings were changed to once per quarter. District Manager Brad Boyle gave Anderson a 2 SP (Below Expectations) and two 3 SP (Consistently Meets Expectation) during that year.

**ANSWER:**     Defendants deny paragraph 180.

181.     In June 2016, Anderson inquired into getting transferred to another store location after being in the same location for five years. Brad Boyle told Anderson regarding his request, "If I move you, you won't retire on me, will you?" Anderson told him no, he didn't plan on retiring.  Within two weeks of that conversation four younger store directors were transferred from underperforming stores to higher performing stores.

**ANSWER:**     Defendants deny paragraph 181.

182.     In October 2016 Laryea replaced Brad Boyle as Anderson's District Manager.

**ANSWER:**     Defendants admit paragraph 182.

183.     In October 2016, the first time Laryea met Anderson, Laryea asked Anderson, "How long are you going to work? I heard you have a lot of money and weren't going to be around long and you might be retiring." Anderson denied that he had any plans to retire and asked Laryea who told him that. Instead of answering, Laryea just laughed and walked away.

**ANSWER:**     Defendants deny paragraph 183.

184.     At about every other store visit by Laryea, Laryea pressured Anderson into retiring or picking a date to retire. On the morning of November 22, 2016, Laryea came to Anderson and stated, "I heard you were retiring on December 3, 2016." When Anderson told him that was not true. Laryea started pressuring Anderson to give him a date he would retire.

**ANSWER:**    Defendants deny paragraph 184.

185.    Anderson complained to Laryea multiple times that Anderson was not getting enough payroll to adequately staff the store compared to what other stores were receiving. When Laryea investigated the payroll amounts he did admit that Anderson's store was getting less than other stores but stated "there was nothing he could do about it this quarter, we will look at it next quarter."

**ANSWER:**    Defendants deny paragraph 185.

186.    In the weeks leading up to December 31, 2016, Laryea placed Anderson under heightened and intense scrutiny, including visiting his store at least once a week to give criticisms and reprimands for minor flaws and issues that had never been an issue throughout Anderson's career.

**ANSWER:**    Defendants deny paragraph 186.

187.    In the three months leading up to December 31, 2016, Laryea visited Anderson's store approximately 2-3 times a week. Laryea would specifically try to show up at Anderson's store when Anderson was not working to take pictures and criticize the appearance of the store including whether the produce was perfectly aligned at all times. Laryea held Anderson's store to the impossible standard of a store on the day of its grand opening.

**ANSWER:**    Defendants deny paragraph 187.

188.    During the last three months of employment with Defendant, Anderson was forced to work 6-7 days a week and averaged 14 hours a day to keep up with the unreasonable demands placed upon him by Laryea.

**ANSWER:**    Defendants deny paragraph 188.

189.    While Anderson was constantly working overtime to keep the store in good condition because he was not given the payroll to hire the help he needed, two other stores located within 2 miles of Anderson's store were given each approximately twenty thousand dollars more in payroll.

**ANSWER:**    Defendants deny paragraph 189.

190.    On November 29, 2016, Laryea sent a human resources representative to Anderson's store to discuss retirement even though Anderson never told Laryea that he wanted to retire. The human resources representative told Anderson he could take the whole month of December off if he retired on December 31, 2016.

**ANSWER:**    Defendants deny paragraph 190.

191.    On or around December 31, 2016, Anderson was constructively discharged from Defendant because the working conditions were so intolerable and/or unbearable that Anderson

could no longer work at Defendant.

**ANSWER:**    Defendants deny paragraph 191.

192.    When Anderson was constructively discharged on December 31, 2016, Defendant replaced him with a much younger Store Director. On information and belief, Laryea gave him approximately five thousand dollars more in payroll and no restrictions regarding backroom conditions, labor, earnings, etc.

**ANSWER:**    Defendants deny paragraph 192.

193.    At all times relevant, Anderson performed his job at and above a satisfactory manner and to the legitimate expectations of Defendant, consistently receiving good performance reviews.

**ANSWER:**    Defendants admit that during the relevant period, Anderson consistently

received performance reviews providing him with overall satisfactory or above ratings, with

constructive comments for improvement.    Defendants deny the remaining allegations in

paragraph 193.

## INDIVIDUAL FACTS: ESBOLDT

194.    Esboldt restates and realleges paragraphs one through sixty-one (1-61) as if fully stated herein as paragraph one-hundred-ninety-four (194).

**ANSWER:**    Defendants restate their answers to paragraphs one through sixty-one (1-

61) as if fully stated herein as paragraph one hundred ninety-four (194).

195.    In or around May 3, 1976, Defendant hired Esboldt as a store clerk at the location at 60th and Western in Chicago. After three years working as a store clerk for Defendant, Esboldt was promoted Night Crew Chief. From there until 1986, Esboldt continued his employment with Defendant being promoted to the Night Crew Chief then to Assistant Manager then to Assistant Store Director. Esboldt held that position until 2000 when he was promoted to the position of Store Director at the Dolton, IL store.

**ANSWER:**    Defendants admit that Esboldt was hired on May 3, 1976 and was

promoted to the positon of Store Director in 2002.    Defendants deny the remaining allegations

set forth in paragraph 195.

196.    In 2000, when Esboldt took over the Dolton store, that store was an underperforming loss store. It was losing 1 million dollars a year and the store's shrink was

roughly 20% annually. By the next year, under Esboldt's leadership, that store's loss numbers were cut in half and the annual shrink was cut to 12%.

**ANSWER:**    Defendants deny paragraph 196.

197.    In 2003, Esboldt was transferred to the Kankakee, IL store which was a loss store and under preforming at the time. This store had been losing $1,500,000.00 the prior year but under Esboldt's leadership, he turned the sales numbers around and after a year that store was only losing $500,000.00 annually.

**ANSWER:**    Defendants deny paragraph 197.

198.    In 2004, Esboldt was transferred to another underperforming loss store located at 69th Street and Western in Chicago. The prior year, that store lost about $1,200,000.00. Under Esboldt's leadership he turned the store around and it posted a profit of roughly $600,000.00. Esboldt received much positive feedback regarding the customers experience shopping in that store.

**ANSWER:**    Defendants deny paragraph 198.

199.    From 2004 to 2010, Esboldt continued to turnaround and improve store conditions, turning loss stores profitable. In 2009, Esboldt was chosen to oversee a remodel at the 35th Street and King Drive store location in Chicago. That remodel went so well that the President of Jewel told Esboldt that he had done a "Great Job."

**ANSWER:**    Defendants deny paragraph 199.

200.    Esboldt was offered a severance package pursuant to Defendant's RIF but did not accept it.

**ANSWER:**    Defendants admit that all Store Directors, including Esboldt, were offered the opportunity to receive an enhanced buy-out package under the Voluntary Resignation Plan in early 2011. Defendants admit that Esboldt did not request a buy-out package and continued to be employed with Defendants. Defendants deny the remaining allegations set forth in paragraph

201.    Prior to 2010, Esboldt did not receive a performance rating below 4 SP (Consistently Meets and often Exceeds Expectation; Satisfactorily Placed)

**ANSWER:**    Defendants deny paragraph 201.

202.    Around 2010, Esboldt was approached by his District Manager Ken Dion and was told to fire two Assistant Store Directors which were both over the age of 40 that worked for Esboldt.

**ANSWER:**    Defendants deny paragraph 202.

203.    Esboldt felt that both Assistant Store Directors were knowledgeable and good workers and did not think they should be fired because they were doing a good job. Esboldt told Ken Dion that he did not want to fire them. That year, Esboldt received his first performance rating of 3 SP (Consistently Meets Expectation) in retaliation for not terminating the two Assistant Store Directors.

**ANSWER:**    Defendants deny paragraph 203.

204.    Dion continued to pressure Esboldt to terminate those Assistant Store Directors saying, "They don't belong" and "You need to work them out." Those statements were meant to convey to Esboldt that he needed to put pressure on those two Assistant Store Directors until they quit.

**ANSWER:**    Defendants deny paragraph 204.

205.    Ken Dion advised Esboldt of tactics to force the two Assistant Store Directors to quit. Those tactics included sitting them down and asking detailed questions about all aspects of the stores PNL which could not be known and when they do not know the answers to write them up and aggressively micro-managing them while documenting all their mistakes.

**ANSWER:**    Defendants deny paragraph 205.

206.    Esboldt continued to refuse to fire those two Assistant Store Directors and in retaliation, the next year Esboldt received a performance rating of 2 SP (Below Expectations). This was the only time in Esboldt's career in which he received that performance rating. Ken Dion threatened Esboldt regarding firing the two Assistant Store Directors, "Don't let them cost you your job." In addition, at one time, an Operations Specialist approached Esboldt referring to one of the Assistant Store Directors and asked, "Why haven't you worked her out yet?"

**ANSWER:**    Defendants deny paragraph 206.

207.    Around 2013 and 2014, Dominick's, a regional competitor of Jewel shut down many stores in the Chicagoland area and terminated all their staff.

**ANSWER:**    Defendants admit that in 2013 and 2014, Dominick's, a regional competitor of Jewel, closed many of its stores in the Chicagoland area and Dominick's employees were impacted by the closures. Defendants are without sufficient information to admit or deny the remaining allegations set forth in paragraph 207 and therefore deny the same.

208.    In 2015, during a store director's meeting that Esboldt attended, one of the District Managers told the group that "If you didn't make your numbers, we have plenty of younger Dominick's store managers." Esboldt also witnessed higher management state that

"Longevity isn't a factor and it isn't going to save anyone's job."

**ANSWER:**    Defendants deny paragraph 208.

209.    In 2015, as a result of a broken sprinkler system at one of Esboldt's stores, there was a flood and since Esboldt was short staffed, he took the responsibility to mop up the water. At the same time Ken Dion was visiting the store and saw Esboldt mopping up the water. In front of many witnesses, Ken Dion asked "Ed, how old are you?" Esboldt responded, "Why?" Ken Dion did not respond and just walked away.

**ANSWER:**    Defendants deny paragraph 209.

210.    In 2016, Esboldt requested to be transferred to a different store closer to his home in either Tinley Park or Oak Forest and that request was denied yet at the same time younger store directors were allowed to transfer into those stores.

**ANSWER:**    Defendants deny paragraph 210.

211.    In 2016, Esboldt was contacted by Defendant's loss prevention group and questioned about inventory mistakes. There were mistakes in counting inventory that were blamed on Esboldt yet it was not Esboldt's responsibility to count the inventory, Esboldt only entered the numbers after the inventory was counted by other employees.

**ANSWER:**    Defendants admit that in April 2016, District Manager, Kenneth Dion, learned that Esboldt falsely reported his store's inventory in an attempt to improve his shrink performance and a member of Defendants' loss prevention group questioned Esboldt. Defendants admit that Esboldt admitted that he changed numbers and made a poor decision. Defendants deny the remaining allegations set forth in paragraph 211.

212.    Esboldt had been employed by Defendant for over thirty years and had never had a store audited for inventory loss.

**ANSWER:**    Defendants deny paragraph 212.

213.    Defendant targeted Esboldt through the inventory audit to pressure him into resigning.

**ANSWER:**    Defendants deny paragraph 213.

214.    As Defendant increased the pressure on Esboldt, Esboldt asked a human resources representative if he could just step down into a lower role.

**ANSWER:**    Defendants deny paragraph 214.

215.    Esboldt was told that he is unable to step down because his District Manager "thinks" his performance rating should be a 2 SP but Esboldt's performance ratings had been at a 3 SP for the last three years. Defendant had a policy of not letting employees that were currently at a 2 NP performance rating step down but Esboldt was not given that rating that year. Younger Store Directors had been able to step down if they had a 3 SP performance rating.

**ANSWER:**    Defendants deny paragraph 215.

216.    Due to the pressure and stress of being potentially fired, Esboldt was constructively discharged on June 1, 2016, Defendant replaced him with a much younger Store Director.

**ANSWER:**    Defendants deny paragraph 216.

217.    At all times relevant, Esboldt performed his job at and above a satisfactory manner and to the legitimate expectations of Defendant, consistently receiving good performance reviews.

**ANSWER:**    Defendants deny paragraph 217.

## INDIVIDUAL FACTS: NELSON

218.    Nelson restates and realleges paragraphs one through sixty-one (1-61) as if fully stated herein as paragraph two-hundred-eighteen (218).

**ANSWER:**    Defendants restate their answers to paragraphs one through sixty-one (1-61) as if fully stated herein as paragraph two hundred eighteen (218).

219.    In or around December 2006, Defendant hired Nelson as a store director at the 9400 Ashland Avenue in Blue Island store. Nelson began working for Defendant after having worked nineteen years for both Eagle Foods and Cub Foods. Nelson had been working in the role of a store director since 1987. Prior to joining Defendant, Nelson had received the outstanding chain store manager award and the store manager of the year award at his previous employers.

**ANSWER:**    Defendants deny paragraph 219.

220.    After working two years for Defendant at the Blue Island store, Nelson resigned to go to work for a competitor. When Nelson resigned, he was thought of so highly that Defendant offered him a better position with the hopes of retaining him. Nelson turned that offer down.

**ANSWER:**    Defendants deny paragraph 220.

221.    After two years working for a competitor, in 2009 Nelson wanted to get back into the grocery business because he learned that working in grocery was his true passion and so he

reapplied to work for Defendant.

**ANSWER:**    Defendants admit that Nelson reapplied for a position in 2010.

Defendants deny the remaining allegations set forth in paragraph 221.

222.    Nelson was re-hired as a store director at the Downers Grove store. The year prior, that store did not reach its sales goal but under Nelson's leadership, the next year, that location exceeded its sales goal.

**ANSWER:**    Defendants deny paragraph 222.

223.    In 2011, Nelson was transferred to the Darien store during the middle of a major remodel to oversee the project. After the remodel was complete, the Vice President of Operations, Nick Bertrum, stated that the Darien store was "the best remodeled store he had seen since he had been with the company" and gave Nelson high praise for its success.

**ANSWER**:  Defendants deny paragraph 223.

224.    From and after April 2011, Nelson reported to the following District Managers: 1) Aquanetta Dawson; 2) Ron Harris; 3) Steve DeSantiago; 4) Brian Finnegan 5) Mark Laryea; and 6) Maria Bruschenko.

**ANSWER:**    Defendants admit paragraph 224.

225.    Despite Nelson's outstanding performance, shortly after Laryea became Nelson's District Manager, Laryea began criticizing and reprimanding Nelson for minor store issues and flaws that were never before at issue. These issues were universal in all stores. Other similarly-situated Store Directors under the age of forty (40) or more than ten (10) years younger than him were not criticized or reprimanded for the same issues in their stores.

**ANSWER:**    Defendants deny paragraph 225.

226.    On or about November 2, 2016, Kim Watson, the Bakery Operations Specialist, was called by Maria Brushenko to inspect Nelson's store. On that date Kim Watson told Nelson, "I don't know why she called me, you are not in that bad of shape." When Nelson asked Kim Watson why Maria Brushenko was treating him differently, Kim Watson responded, "Don't you know you are on Maria's radar." That statement meant that Maria Brushenko had the goal of working Nelson out of the company.

**ANSWER:**    Defendants deny paragraph 226.

227.    During another store visit by Kim Watson, she told Nelson that she was going to give his store an 8/10 rating. She stated that the rating "was actually a 9/10, but if I rated you a 9, then Maria would be in her next day proving me wrong."

**ANSWER:**    Defendants deny paragraph 227.

228. On November 3, 2016, Nelson was at a human resource meeting at a different store, #3068, located in Westmont which employed a younger store director. Nelson walked that store and noticed the meat department was in poor condition with many items out of stock, the frozen foods department was in poor condition with many items out of stock, and the men's room was in poor condition due to misplaced soap containers and missing signs. That younger store director was not reprimanded by Maria Brushenko but rather Nelson was singled out in front of the group of store directors and reprimanded for deficiencies discovered during a bakery visit earlier in the week.

**ANSWER**     Defendants deny paragraph 228.

229. On or about November 18, 2016, which was a busy day just prior to Thanksgiving, Maria Brushenko showed up at Nelson's store and began to take pictures of the shopped areas. Maria Brushenko then walked the store with Nelson and identified areas she wanted changed. At the end of that walk-through Nelson felt sick so he went to the pharmacy department and took his blood pressure. His blood pressure reading was 170/98. The pharmacist told Nelson that his blood pressure was too high and he should see a doctor immediately. Nelson then went to Maria Brushenko and told her about his blood pressure and that he needed to leave to see a doctor. Maria Brushenko did not let him leave but rather sat him down and continued to criticize his store and give Nelson a writeup.

**ANSWER:**     Defendants deny paragraph 229.

230. In January 2017, Nelson was singled out and reprimanded for missing a 7 a.m. meeting when at the same time younger store directors also missed that meeting and were not singled out and reprimanded.

**ANSWER:**     Defendants deny paragraph 230.

231. At one time while Mark Laryea was Nelson's District Manager, Nelson was scheduled to work 5 a.m. to 8 p.m. and then was scheduled to work the next day at 5 a.m. Nelson left work at 8 p.m. and on the way home he was called by Laryea and told to come back to the store to get it ready because Vice President Jerry Otis was visiting the next day.

**ANSWER:**     Defendants are without sufficient information to admit or deny paragraph

231 and therefore deny the same.

232. Nelson came back to the store and worked through the night preparing the store for the visit. Nelson worked until 11:30 a.m. the next day without sleep.

**ANSWER:**     Defendants are without sufficient information to admit or deny paragraph

232 and therefore deny the same.

233. After leaving work at around 11:30 a.m. and having not slept, Nelson fell asleep at the wheel and crashed his car into a tree, totaling his vehicle and severely injuring his

shoulder. Nelson called Laryea the next day and left a voice mail message about the collision. Laryea never discussed what happened on any future visits.

**ANSWER:** Defendants are without sufficient information to admit or deny paragraph

233 and therefore deny the same.

234. During the fourth quarter 2016, Maria Bruschenko lowered Nelson's forecast sales which affected the amount he was allocated for payroll. As a result, Nelson had to reduce the workforce and there were not enough employees to maintain the standards set by Maria Bruschenko. Even though the forecast sales were continually being lowered and thus Nelson was allotted less payroll, Nelson's store sales numbers beat those forecasts by thousands of dollars.

**ANSWER:** Defendants deny paragraph 234.

235. Nelson began to recognize that he was being treated differently from younger Store Directors. This treatment included, but was not limited to, the younger Store Directors: 1) not being criticized and reprimanded for minor store issues and flaws that were at issue in Nelson's stores; 2) not being given negative performance reviews; 3) not being threatened with the loss of their jobs; 4) not being forced to remain in underperforming stores.

**ANSWER:** Defendants deny paragraph 235.

236. At all times relevant, Nelson performed his job at and above a satisfactory manner and to the legitimate expectations of Defendant, consistently receiving good performance reviews.

**ANSWER:** Defendants deny paragraph 236.

237. On or around February 4, 2017, Nelson was constructively discharged from Defendant because the working conditions were so intolerable and/or unbearable that Nelson could no longer work at Defendant.

**ANSWER:** Defendants deny paragraph 237.

## COUNT I
**(TIMOTHY CESARIO, STEVE CIESLAK, GREGORY LAROCCO, JAMES LEE, FRANK ANDERSON, EDWARD ESBOLDT, AND LESTER NELSON: DISPARATE IMPACT IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C.A. § 621 *et. seq.*)**

Count I has been dismissed pursuant to the court's Order dated November 7, 2017.

## COUNT II
### (TIMOTHY CESARIO: DISPARATE TREATMENT IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C.A. § 621 *et. seq.*)

255.    Cesario restates and realleges paragraphs one through eighty-five (1-85) as if fully stated herein as paragraph two-hundred-fifty-five (255).

**ANSWER:**    Defendants restate their answers to paragraphs one through sixty-one (1-61) as if fully stated herein as paragraph two hundred fifty-five (255).

256.    Cesario is a member of a protected class within the meaning of the ADEA, wherein he is over the age of forty (40).

**ANSWER:**    Defendant admits paragraph 256.

257.    At all relevant times, Cesario was meeting Defendant's legitimate business expectations.

**ANSWER:**    Defendant denies paragraph 257.

258.    Defendant subjected Cesario to age discrimination by giving him less advantageous employment terms and conditions than given to younger employee(s).

**ANSWER:**    Defendant denies paragraph 258.

259.    The disparate treatment discrimination included, but was not limited to: 1) transferring Cesario to an underperforming store; 2) criticizing and reprimanding Cesario's performance; 3) building a case for Cesario's termination; 4) instituting a campaign of unreasonable and unwarranted discipline against Cesario; 5) giving unwarranted, negative performance reviews to Cesario; 6) denying Cesario bonuses based on the unwarranted, negative performance reviews; 7) giving Cesario unattainable sales goals; 8) giving Cesario write-ups for minor flaws and issues that were never before at issue in his career; 9) denying Cesario the opportunity to transfer to another store; 10) failing to train and/or failing to sufficiently train Cesario for the single store Director Position.

**ANSWER:**    Defendant denies paragraph 259.

260.    Defendants and its agents have willfully and intentionally discriminated against Cesario on the basis of his age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C.A. § 621 *et. seq.*

**ANSWER:**    Defendant denies paragraph 260.

261.    Defendant failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring in the future. 42 U.S.C. § 2000e.

**ANSWER:**    Defendant denies paragraph 261.

262.    As a direct and proximate result of Defendant's discrimination against Cesario, he has suffered and will continue to suffer damage including loss of wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional distress. Cesario is thereby entitled to general and compensatory damages in amounts to be proven at trial.

**ANSWER:**    Defendant denies paragraph 262.

263.    The willful nature of the violations, committed with malice or reckless indifference to the federally protected rights of Cesario, warrant statutory punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

**ANSWER:**    Defendant denies paragraph 263.

264.    Cesario also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

**ANSWER:**    Defendant denies that Cesario is entitled to any of the relief requested in

paragraph 264.

WHEREFORE, Plaintiff, TIMOTHY CESARIO, prays for judgment in his favor and against Defendant and asks that the court award him direct and consequential damages, lost wages and benefits, liquidated damages, front pay, back pay, punitive damages pursuant to 42 U.S.C. § 1981a(b)(1), reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as the Court may find appropriate.

**ANSWER:**    Defendant denies that Cesario is entitled to any of the relief requested.

## COUNT III
### (TIMOTHY CESARIO: RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 *et. seq.*)

Count III has been dismissed pursuant to the court's Order dated November 7, 2017.

## COUNT IV
### (TIMOTHY CESARIO: TORT-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

Count IV has been dismissed pursuant to the court's Order dated November 7, 2017.

## COUNT V
## (STEVE CIESLAK: DISPARATE TREATMENT IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C.A. § 621 *et. seq.*)

276.     Cieslak restates and realleges paragraphs one through sixty-one (1-61) and eighty-six through one-hundred-fourteen (86-114) as if fully stated herein as paragraph two-hundred-seventy-six (276).

**ANSWER:**     Defendants restate their answers to paragraphs one through sixty-one (1-61) and eighty-six through one hundred fourteen (86-114) as if fully stated herein as paragraph two hundred seventy-six (276).

277.     Cieslak is a member of a protected class within the meaning of the ADEA, wherein he is over the age of forty (40).

**ANSWER:**     Defendants admit paragraph 277.

278.     At all relevant times, Cieslak was meeting Defendant's legitimate business expectations.

**ANSWER:**     Defendant denies paragraph 278.

279.     Defendant subjected Cieslak to age discrimination by giving him less advantageous employment terms and conditions than given to younger employee(s).

**ANSWER:**     Defendant denies paragraph 279.

280.     The disparate treatment discrimination included, but was not limited to: 1) transferring Cieslak to an underperforming and failing stores; 2) criticizing and reprimanding Cieslak's performance; 3) building a case for Cieslak's termination; 4) instituting a campaign of unreasonable and unwarranted discipline against Cieslak; 5) giving unwarranted, negative performance reviews to Cieslak; 6) denying Cieslak bonuses based on the unwarranted, negative performance reviews; 7) giving Cieslak unattainable sales goals; 8) giving Cieslak write-ups for minor flaws and issues that were never before at issue in his career; 9) denying Cieslak the opportunity to transfer to another store; 10) failing to train and/or failing to sufficiently train Cieslak for the single store Director Position.

**ANSWER:**     Defendant denies paragraph 280.

281.     Defendants and its employees and/or agents have willfully and intentionally discriminated against Cieslak on the basis of his age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C.A. § 621 *et. seq.*

**ANSWER:**     Defendant denies paragraph 281.

282.    Defendant failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring in the future. 42 U.S.C. § 2000e.

**ANSWER:**    Defendant denies paragraph 282.

283.    As a direct and proximate result of Defendant's discrimination against Cieslak, he has suffered and will continue to suffer damage including loss of wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional distress. Cieslak is thereby entitled to general and compensatory damages in amounts to be proven at trial.

**ANSWER:**    Defendant denies paragraph 283.

284.    The willful nature of the violations, committed with malice or reckless indifference to the federally protected rights of Cieslak, warrant statutory punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

**ANSWER:**    Defendant denies paragraph 284.

285.    Cieslak also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

**ANSWER:**    Defendant denies Cieslak is entitled to any of the relief requested in

paragraph 285.

WHEREFORE, Plaintiff, STEVE CIESLAK, prays for judgment in his favor and against Defendant and asks that the court award him direct and consequential damages, lost wages and benefits, liquidated damages, front pay, back pay, punitive damages pursuant to 42 U.S.C. § 1981a(b)(1), reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as the Court may find appropriate.

**ANSWER:**    Defendant denies that Cieslak is entitled to any of the relief requested.


## COUNT VI
## (STEVE CIESLAK: RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C.A. § 621 *et. seq.*)

286.    Cieslak restates and realleges paragraphs one through sixty-one (1-61) and eight-six through one-hundred-fourteen (86-114) as if fully stated herein as paragraph two-hundred-eighty-six (286).

**ANSWER:**    Defendants restate their answers to paragraphs one through sixty-one (1-

61) and one hundred fourteen (86-114) as if fully stated herein as paragraph two hundred eighty-

six (286).

287.    Cieslak engaged in statutorily protected activity by making informal and formal complaints to Defendant and by filing his Charge(s) of Discrimination (Charge and Amended Charge) with the EEOC against Defendant for discrimination, harassment, retaliation and failure to train that Defendant had subjected Cieslak to throughout his employment with Defendant.

**ANSWER:**    Defendants admit that Cieslak engaged in protected activity by filing a

Charge and Amended Charge of Discrimination against New Albertsons Inc., AB Acquisitions

LLC and Jewel-Osco with the EEOC alleging discrimination, harassment and retaliation.

Defendants deny the remaining allegations set forth in paragraph 287.

288.    Defendant retaliated against Cieslak for engaging in the aforementioned statutorily protected activity by: 1) giving Cieslak unwarranted, negative performance reviews; 2) denying Cieslak bonuses based on the unwarranted, negative performance reviews; 3) subjecting Cieslak to further heightened scrutiny and excessive micromanaging; 4) creating a hostile work environment for Cieslak to work in; 4) transferring Cieslak to the smallest volume store in the district, store #3236; 4) replacing Cieslak's Assistant Store Director with another Assistant Store Director who was out on a medical leave of absence, thereby providing Cieslak to run the store for approximately two (2) months; and 5) giving Cieslak unattainable sales goals, thereby setting him up to fail.

**ANSWER:**    Defendant denies paragraph 288.

289.    There is a causal connection between the statutorily protected activity and Defendant's action.

**ANSWER:**    Defendant denies paragraph 289.

290.    As a direct and proximate result of Defendant's retaliation against Cieslak, he has suffered and will continue to suffer damages including, pain and suffering, and extreme and severe mental anguish and emotional distress arising from a hostile work environment; losses of monetary compensation vis-à-vis lost bonuses; and injunctive relief to reverse and to prevent noncompliance with its duties under law.   Cieslak is thereby entitled to general and compensatory damages in amounts to be proven at trial.

**ANSWER:**    Defendant denies paragraph 290.

291.    Cieslak seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

**ANSWER:**    Defendant denies that Cieslak is entitled to the relief requested in

paragraph 291.

WHEREFORE, Plaintiff, STEVE CIESLAK, prays for judgment in his favor and against Defendant and that the court award him direct and consequential damages, statutory attorneys' fees, lost wages and benefits, liquidated damages, front pay, prejudgment interest, post-judgment interest, and costs in this action including reasonable statutory attorneys' fees and expert witness fees, and grant such other relief as the Court may find appropriate.

**ANSWER:** Defendant denies that Cieslak is entitled to any of the requested relief.

## COUNT VII
## (STEVE CIESLAK: TORT
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

Count VII has been dismissed pursuant to the court's Order dated November 7, 2017.

## COUNT VIII
## (GREGORY LAROCCO: DISPARATE TREATMENT IN VIOLATION OF THE AGE
## DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C.A. § 621 *et. seq.*)

297.    LaRocco restates and realleges paragraphs one through sixty-one (1-61) and one-hundred-fifteen through one-hundred-thirty-five (115-135) as if fully stated herein as paragraph two-hundred-ninety-seven (297).

**ANSWER:** Defendants restate their answers to paragraphs one through sixty-one (1-61) and one hundred fifteen through one hundred thirty-five (115-135) as if fully stated herein as paragraph two hundred ninety-seven (297).

298.    LaRocco is a member of a protected class within the meaning of the ADEA, wherein he is over the age of forty (40).

**ANSWER:** Defendants admit paragraph 298.

299.    At all relevant times, LaRocco was meeting Defendant's legitimate business expectations.

**ANSWER:** Defendants deny paragraph 299.

300.    Defendant subjected LaRocco age discrimination by giving him less advantageous employment terms and conditions than given to younger employee(s).

**ANSWER:** Defendant denies paragraph 300.

301.    The disparate treatment discrimination included, but was not limited to: 1) transferring LaRocco to an underperforming and failing store; 2) criticizing and reprimanding

LaRocco's performance; 3) building a case for LaRocco's termination; 4) instituting a campaign of unreasonable and unwarranted discipline against LaRocco; 5) giving unwarranted, negative performance reviews to LaRocco; 6) denying LaRocco bonuses based on the unwarranted, negative performance reviews; 7) giving LaRocco write-ups for minor flaws and issues that were never before at issue in his career; 8) providing assistance to younger Store Directors who were having performance issues, while denying LaRocco assistance; 9) failing to train and/or failing to sufficiently train LaRocco for the single store Director Position.

**ANSWER:**   Defendant denies paragraph 301.

302.   Defendants and its agents have willfully and intentionally discriminated against LaRocco on the basis of his age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C.A. § 621 *et. seq.*

**ANSWER:**   Defendant denies paragraph 302.

303.   Defendant failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring in the future. 42 U.S.C. § 2000e.

**ANSWER:**   Defendant denies paragraph 303.

304.   As a direct and proximate result of Defendant's discrimination against LaRocco, he has suffered and will continue to suffer damage including loss of wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional distress. LaRocco is thereby entitled to general and compensatory damages in amounts to be proven at trial.

**ANSWER:**   Defendant denies paragraph 304.

305.   The willful nature of the violations, committed with malice or reckless indifference to the federally protected rights of LaRocco, warrant statutory punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

**ANSWER:**   Defendant denies paragraph 305.

306.   LaRocco also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

**ANSWER:**   Defendant denies that LaRocco is entitled to any of the relief requested in

paragraph 306.

WHEREFORE, Plaintiff, GREGORY LAROCCO, prays for judgment in his favor and against Defendant and asks that the court award him direct and consequential damages, lost wages and benefits, liquidated damages, front pay, back pay, punitive damages pursuant to 42 U.S.C. § 1981a(b)(1), reasonable statutory attorneys' fees, expert witness fees, and costs, and

such other relief as the Court may find appropriate.

**ANSWER:** Defendants deny that LaRocco is entitled to any of the requested relief.

**COUNT IX**
**(GREGORY LAROCCO: RETALIATION IN VIOLATION OF THE AGE**
**DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C.A. § 621 *et. seq.*)**

307.    LaRocco restates and realleges paragraphs one through sixty-one (1-61) and one-hundred-fifteen through one-hundred-thirty-five (115-135) as if fully stated herein as paragraph three-hundred-seven (307).

**ANSWER:** Defendants restate their answers to paragraphs one through sixty-one (1-61) and one hundred fifteen through one hundred thirty-five (115-135) as if fully stated herein as paragraph three hundred seven (307).

308.    LaRocco engaged in statutorily protected activity by making informal and formal complaints to Defendant and by filing his Charge of Discrimination with the EEOC against Defendant for discrimination, harassment and retaliation Defendant had subjected LaRocco to throughout his employment with Defendant.

**ANSWER:** Defendants admit that on August 6, 2015 LaRocco filed a Charge of Discrimination against Jewel Food with the EEOC, and that on August 21, 2015, LaRocco filed an amended Charge against the same Respondent alleging discrimination and retaliation. Defendants deny the remaining allegations in paragraph 308.

309.    Defendant retaliated against LaRocco for engaging in the statutorily protected activity by: 1) giving unwarranted, negative performance reviews to LaRocco; 2) denying LaRocco bonuses based on the unwarranted, negative performance reviews; and 3) terminating LaRocco's employment.

**ANSWER:** Defendants deny paragraph 309.

310.    There is a causal connection between the statutorily protected activity and Defendant's action.

**ANSWER:** Defendants deny paragraph 310.

311.    As a direct and proximate result of Defendant's retaliation against LaRocco, he has suffered and will continue to suffer damages including, losses of monetary compensation vis-à-vis lost bonuses; loss of wages and benefits, liquidated damages, pain and suffering, and extreme and severe mental anguish and emotional distress; and injunctive relief to reverse and to

prevent noncompliance with its duties under law. LaRocco is thereby entitled to general and compensatory damages in amounts to be proven at trial.

**ANSWER:**    Defendants deny paragraph 311.

312.    LaRocco seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

**ANSWER:**    Defendants deny that LaRocco is entitled to any of the relief requested in

paragraph 312.

WHEREFORE, Plaintiff, GREGORY LAROCCO, prays for judgment in his favor and against Defendant and that the court award him direct and consequential damages, statutory attorneys' fees, lost wages and benefits, liquidated damages, front pay, prejudgment interest, post- judgment interest, and costs in this action including reasonable statutory attorneys' fees and expert witness fees, and grant such other relief as the Court may find appropriate.

**ANSWER:**    Defendants deny that LaRocco is entitled to any of the relief requested.

## COUNT X
## (GREGORY LAROCCO: TORT-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

Count X has been dismissed pursuant to the court's Order dated November 7, 2017.


## COUNT XI
## (JAMES LEE: DISPARATE TREATMENT IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C.A. § 621 *et. seq.*)

318.    Lee restates and realleges paragraphs one through sixty-one (1-61) and one-hundred-thirty-six through one-hundred-sixty-nine (136-169) as if fully stated herein as paragraph three-hundred-eighteen (318).

**ANSWER:**    Defendants restate their answers to paragraphs one through sixty-one (1-61) and one hundred thirty-six through one hundred sixty-nine (136-169) as if fully stated herein as paragraph three hundred eighteen (318).

319.    Lee is a member of a protected class within the meaning of the ADEA, wherein he is over the age of forty (40).

**ANSWER:**    Defendants admit paragraph 319.

320.    At all relevant times, Lee was meeting Defendant's legitimate business expectations.

**ANSWER:**    Defendants deny paragraph 320.

321.    Defendant subjected Lee to age discrimination by giving him less advantageous employment terms and conditions than given to younger employee(s).

**ANSWER:**    Defendants deny paragraph 321.

322.    The disparate treatment discrimination included, but was not limited to: 1) transferring Lee to an underperforming and failing store; 2) criticizing and reprimanding Lee's performance; 3) building a case for Lee's termination; 4) instituting a campaign of unreasonable and unwarranted discipline against Lee; 5) giving unwarranted, negative performance reviews to Lee; 6) denying Lee bonuses based on earned positive performance review; 7) denying Lee bonuses based on the unwarranted, negative performance reviews; 8) giving Lee unattainable sales goals; 9) giving Lee write-ups for minor flaws and issues that were never before at issue in his career; and 10) failing to train and/or failing to sufficiently train Lee for the single store Director Position.

**ANSWER:**    Defendants deny paragraph 322.

323.    Defendants and its agents have willfully and intentionally discriminated against Lee on the basis of his age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C.A. § 621 *et. seq.*

**ANSWER:**    Defendants deny paragraph 323.

324.    Defendant failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring in the future. 42 U.S.C. § 2000e.

**ANSWER:**    Defendants deny paragraph 324.

325.    As a direct and proximate result of Defendant's discrimination against Lee, he has suffered and will continue to suffer damage including loss of wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional distress. Lee is thereby entitled to general and compensatory damages in amounts to be proven at trial.

**ANSWER:**    Defendants deny paragraph 325.

326.    The willful nature of the violations, committed with malice or reckless indifference to the federally protected rights of Lee, warrant statutory punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

**ANSWER:**    Defendants deny paragraph 326.

327.    Lee also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

**ANSWER:**    Defendants deny that Lee is entitled to any of the relief requested in

paragraph 327.

WHEREFORE, Plaintiff, JAMES LEE, prays for judgment in his favor and against Defendant and asks that the court award him direct and consequential damages, lost wages and benefits, liquidated damages, front pay, back pay, punitive damages pursuant to 42 U.S.C. § 1981a(b)(1), reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as the Court may find appropriate.

**ANSWER:**    Defendants deny that Lee is entitled to any of the relief requested.

## COUNT XII
## (JAMES LEE: RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C.A. § 621 *et. seq.*)

328.    Lee restates and realleges paragraphs one through sixty-one (1-61) and one-hundred-fifteen through one-hundred-thirty-five (115-135) as if fully stated herein as paragraph three-hundred-twenty-eight (328).

**ANSWER:**    Defendants restate their answers to paragraphs one through sixty-one (1-

61) and one hundred fifteen through one hundred thirty-five (115-135) as if fully stated herein as

paragraph three hundred twenty-eight (328).

329.    Lee engaged in statutorily protected activity by making informal and formal complaints to Defendant regarding discrimination and harassment he had been subjected to by his superiors throughout his employment.

**ANSWER:**    Defendants admit that on June 30, 2015 Lee filed a Charge of

Discrimination against Jewel Food with the EEOC, and that on December 18, 2015, Lee filed an

amended Charge against the same Respondent alleging discrimination and harassment.

Defendants deny the remaining allegations in paragraph 329.

330.    Defendant retaliated Lee for engaging in the statutorily protected activity by: 1) giving Lee unwarranted, negative performance reviews; 2) denying Lee bonuses based on the unwarranted, negative performance reviews; 3) subjecting Lee to further heightened scrutiny and excessive micromanaging; 4) creating a hostile work environment for Lee to work in; 4) constructively discharging Lee.

**ANSWER:**     Defendants deny paragraph 330.

331.     There is a causal connection between the statutorily protected activity and Defendant's action.

**ANSWER:**     Defendants deny paragraph 331.

332.     As a direct and proximate result of Defendant's discrimination against Lee, he has suffered and will continue to suffer damage including loss of wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional distress. Lee is thereby entitled to general and compensatory damages in amounts to be proven at trial.

**ANSWER:**     Defendants deny paragraph 332.

333.     Lee seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

**ANSWER:**     Defendants deny that Lee is entitled to any of the relief requested in

paragraph 333.

WHEREFORE, Plaintiff, JAMES LEE, prays for judgment in his favor and against Defendant and that the court award him direct and consequential damages, statutory attorneys' fees, lost wages and benefits, liquidated damages, front pay, prejudgment interest, post-judgment interest, and costs in this action including reasonable statutory attorneys' fees and expert witness fees, and grant such other relief as the Court may find appropriate.

**ANSWER:**     Defendants deny that Lee is entitled to any of the relief requested.

## COUNT XIII
## (JAMES LEE: DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 *et. seq.*)

334.     Lee restates and realleges paragraphs one through sixty-one (1-61) and one-hundred-fifteen through one-hundred-thirty-five (115-135) as if fully stated herein as paragraph three-hundred-thirty-four (334).

**ANSWER:**     Defendants restate their answers to paragraphs one through sixty-one (1-

61) and one hundred fifteen through one hundred thirty-five (115-135) as if fully stated herein as

paragraph three hundred thirty-four (334).

335.     Lee was disabled within the meaning of the ADA.

**ANSWER:**     Paragraph 335 states a legal conclusion to which no response is required.

To the extent a response is required, Defendants deny paragraph 335.

336.    Lee was qualified to perform the essential functions of his job with reasonable accommodation.

**ANSWER:**    Paragraph 336 states a legal conclusion to which no response is required.

To the extent a response is required, Defendants admit that during the relevant period, Lee requested various accommodations based on changing work restrictions and that Lee was approved for all such accommodations, but resigned soon after being approved for additional accommodations.  Defendants deny the remaining allegations in paragraph 336.

337.    Due to Lee's disability, Defendant took adverse action against Lee when it created a hostile work environment that resulted in Defendant Lee's constructive discharge.

**ANSWER:**    Defendants deny paragraph 337.

338.    Defendant and its employees and/or agents willfully and intentionally discriminated against Lee based upon his alleged inability to physically perform his duties in violation of federal law, the ADA.

**ANSWER:**    Defendants deny paragraph 338.

339.    As a direct and proximate result of Defendant's discrimination against Lee, he has suffered and will continue to suffer damage including, wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional distress; injunctive relief to reverse and to prevent noncompliance with its duties under law. Lee is thereby entitled to general and compensatory damages in amounts to be determined at trial.

**ANSWER:**    Defendants deny paragraph 339.

340.    Lee seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

**ANSWER:**    Defendants deny that Lee is entitled to the relief requested in paragraph 340.

WHEREFORE, Plaintiff, JAMES LEE, prays for judgment in his favor and against Defendant and asks that the court award him direct and consequential damages, lost wages and benefits, liquidated damages, front pay, back pay, punitive damages pursuant to 42 U.S.C. § 1981a(b)(1), reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as the Court may find appropriate.

**ANSWER:**     Defendants deny that Lee is entitled to the relief requested.

## COUNT XIV
## (JAMES LEE: FAILURE TO ACCOMMODATE IN VIOLATION OF THE
## AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 *et. seq.*)

341.     Lee restates and realleges paragraphs one through sixty-one (1-61) and one-hundred-fifteen through one-hundred-thirty-five (115-135) as if fully stated herein as paragraph three-hundred-forty-one (341).

**ANSWER:**     Defendants restate their answers to paragraphs one through sixty-one (1-61) and one hundred fifteen through one hundred thirty-five (115-135) as if fully stated herein as paragraph three hundred forty-one (341).

342.     Lee was disabled within the meaning of the ADA.

**ANSWER:**     Paragraph 342 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny paragraph 342.

343.     Lee was a qualified individual with a disability.

**ANSWER:**     Paragraph 343 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny paragraph 343.

344.     Defendant was aware of Lee's disability vis-à-vis Lee's physicians who submitted return to work recommendations with work restrictions, including but not limited to, a forty (40) hour work-week.

**ANSWER:**     Defendants admit that in July, 2014, after returning from a leave of absence, Lee submitted work restrictions that included a forty (40) hour work-week, and that Lee submitted additional work restrictions in late 2014 and early 2015.  Defendants deny the remaining allegations in paragraph 344.

345.     Despite Lee's work restrictions in placed, Defendant failed to accommodate Lee's work restrictions in place, forcing Lee to work in violation of them. Defendants failed to provide a reasonable accommodation to Lee.

**ANSWER:**     Defendants deny paragraph 345.

346.     As a direct and proximate result of Defendant's failure to accommodate Lee, he has suffered and will continue to suffer damage including, wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional distress; and injunctive relief to reverse and to prevent noncompliance with its duties under law. Lee is thereby entitled to general and compensatory damages in amounts to be determined at trial.

**ANSWER:**     Defendants deny paragraph 346.

347.     Lee seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

**ANSWER:**     Defendants deny that Lee is entitled to the relief requested in paragraph 347.

WHEREFORE, Plaintiff, JAMES LEE, prays for judgment in his favor and against Defendant and asks that the court award him direct and consequential damages, future medical expenses, past medical expenses, lost wages and benefits, liquidated damages, punitive damages pursuant to 42 U.S.C. § 1981a(b)(1), front pay, back pay, reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as the Court may find appropriate.

**ANSWER:**     Defendants deny that Lee is entitled to any of the relief requested.

## COUNT XV
## (JAMES LEE: RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 *et. seq.*)

348.     Lee restates and realleges paragraphs one through sixty-one (1-61) and one-hundred-fifteen through one-hundred-thirty-five (115-135) as if fully stated herein as paragraph three-hundred-forty-eight (348).

**ANSWER:**     Defendants restate their answers to paragraphs one through sixty-one (1-61) and one hundred fifteen through one hundred thirty-five (115-135) as if fully stated herein as paragraph three hundred forty-eight (348).

349.     Lee was disabled within the meaning of the ADA.

**ANSWER:**     Paragraph 349 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny paragraph 349.

350.     Lee was qualified to perform the essential functions of his job with reasonable accommodation.

**ANSWER:**    Paragraph 350 states a legal conclusion to which no response is required. To the extent a response is required, Defendants admit that during the relevant period, Lee requested various accommodations based on changing work restrictions and that Lee was approved for all such accommodations, but resigned soon after being approved for additional accommodations.  Defendants deny the remaining allegations in paragraph 350.

351.    Lee engaged in statutorily protected activity by requesting reasonable accommodations, including but not limited to, medical leave and accommodations (forty (40) work week).

**ANSWER:**    Paragraph 351 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny paragraph 351.

352.    Defendant retaliated against Lee when it: 1) forced him to work in violation of his restrictions on several occasions; 2) denied Lee his bonus; 3) subjected Lee to harassment and humiliation, thereby creating a hostile work environment; and 4) constructively discharged Lee.

**ANSWER:**    Defendants deny paragraph 352.

353.    There is a causal connection between the statutorily protected activity and Defendant's action.

**ANSWER:**    Defendants deny paragraph 353.

354.    As a direct and proximate result of Defendant's retaliation against Lee, he has suffered and will continue to suffer damages including, pain and suffering, and extreme and severe mental anguish and emotional distress arising from a hostile work environment; losses of monetary compensation vis-à-vis lost bonuses; and injunctive relief to reverse and to prevent noncompliance with its duties under law. Lee is thereby entitled to general and compensatory damages in amounts to be proven at trial.

**ANSWER:**    Defendants deny paragraph 354.

355.    Lee seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

**ANSWER:**    Defendants deny that Lee is entitled to the requested relief requested in paragraph 355.

WHEREFORE, Plaintiff, JAMES LEE, prays for judgment in his favor and against Defendant and that the court award him direct and consequential damages, statutory attorneys'

fees, lost wages and benefits, liquidated damages, front pay, punitive damages pursuant to 42 U.S.C. § 1981a(b)(1), prejudgment interest, post-judgment interest, and costs in this action including reasonable statutory attorneys' fees and expert witness fees, and grant such other relief as the Court may find appropriate.

**ANSWER:** Defendants deny that Lee is entitled to the requested relief.

### COUNT XVI
### (JAMES LEE: TORT-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

Count XVI has been dismissed pursuant to the court's Order dated November 7, 2017.

### COUNT XVII

### (FRANK ANDERSON: DISPARATE TREATMENT IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C.A. § 621 *et. seq.*)

361. Anderson restates and realleges paragraphs one through sixty-one (1-61) and one-hundred-sixty-nine (169) through one-hundred-ninety-three (193) as if fully stated herein as paragraph three-hundred-sixty-one (361).

**ANSWER:** Defendants restate their answers to paragraphs one through sixty-one (1-61) and one hundred sixty-nine through one hundred ninety-three (169-193) as if fully stated herein as paragraph three hundred sixty-one (361).

362. Anderson is a member of a protected class within the meaning of the ADEA, wherein he is over the age of forty (40).

**ANSWER:** Defendants admit paragraph 362.

363. At all relevant times, Anderson was meeting Defendant's legitimate business expectations.

**ANSWER:** Defendants admit paragraph 363.

364. Defendant subjected Anderson to age discrimination by giving him less advantageous employment terms and conditions than given to younger employee(s).

**ANSWER:** Defendants deny paragraph 364.

365. The disparate treatment discrimination included, but was not limited to: 1) transferring Anderson to an underperforming store; 2) criticizing and reprimanding Anderson's performance; 3) building a case for Anderson's termination; 4) instituting a campaign of

unreasonable and unwarranted discipline against Anderson; 5) giving unwarranted, negative performance reviews to Anderson; 6) denying Anderson bonuses based on the unwarranted, negative performance reviews; 7) giving Anderson unattainable sales goals; 8) giving Anderson write-ups for minor flaws and issues that were never before at issue in his career; and 9) denying Anderson the opportunity to transfer to another store.

  **ANSWER:** Defendants deny paragraph 365.

366. Defendants and its agents have willfully and intentionally discriminated against Anderson on the basis of his age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C.A. §§ 621 *et. seq.*

  **ANSWER:** Defendants deny paragraph 366.

367. Defendant failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring in the future. 42 U.S.C. § 2000e.

  **ANSWER:** Defendants deny paragraph 367.

368. As a direct and proximate result of Defendant's discrimination against Anderson, he has suffered and will continue to suffer damage including loss of wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional distress. Anderson is thereby entitled to general and compensatory damages in amounts to be proven at trial.

  **ANSWER:** Defendants deny paragraph 368.

369. The willful nature of the violations, committed with malice or reckless indifference to the federally protected rights of Anderson, warrant statutory punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

  **ANSWER:** Defendants deny paragraph 368.

370. Anderson also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

  **ANSWER:** Defendants deny that Anderson is entitled to the relief requested in

paragraph 370.

  WHEREFORE, Plaintiff, FRANK ANDERSON, prays for judgment in his favor and against Defendant and asks that the court award him direct and consequential damages, lost wages and benefits, liquidated damages, front pay, back pay, punitive damages pursuant to 42 U.S.C. § 1981a(b)(1), reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as the Court may find appropriate.

**ANSWER:** Defendants deny that Anderson is entitled to the relief requested.

## COUNT XVIII
## (FRANK ANDERSON: RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C.A. §621 *et. seq.*)

371.     Anderson restates and realleges paragraphs one through sixty-one (1-61) and one-hundred-sixty-nine (169) through one-hundred-ninety-three (193) as if fully stated herein as paragraph three-hundred-seventy-one (371).

**ANSWER:**     Defendants restate their answers to paragraphs one through sixty-one (1-61) and one hundred sixty-nine through one hundred ninety-three (169-193) as if fully stated herein as paragraph three hundred seventy-one (371).

372.     Anderson engaged in statutorily protected activity by making informal and formal complaints to Defendant and by filing his Charge(s) of Discrimination with the EEOC against Defendant for discrimination, harassment, and retaliation.

**ANSWER:**     Defendants admit that Anderson engaged in protected activity by filing a EEOC against New Albertsons, Inc., AB Acquisitions LLC and Jewel-Osco alleging discrimination, harassment, and retaliation.   Defendants deny the remaining allegations in paragraph 372.

373.     Defendant retaliated against Anderson for engaging in the aforementioned statutorily protected activity by: 1) giving Anderson unwarranted, negative performance reviews; 2) denying Anderson bonuses based on the unwarranted, negative performance reviews; 3) subjecting Anderson to further heightened scrutiny and excessive micromanaging; 4) creating a hostile work environment for Anderson to work in; 4) transferring Anderson to the worst performing store in the district; 4) replacing Anderson's high performing Assistant Store Director with another Assistant Store Director who Anderson was told he needed to fire, thereby weakening Anderson's support staff; and 5) giving Anderson unattainable sales goals, thereby setting him up to fail.

**ANSWER:**     Defendants deny paragraph 373.

374.     There is a causal connection between the statutorily protected activity and Defendant's action.

**ANSWER:**     Defendants deny paragraph 374.

375.     As a direct and proximate result of Defendant's retaliation against Anderson, he has suffered and will continue to suffer damages including, pain and suffering, and extreme and

severe mental anguish and emotional distress arising from a hostile work environment; losses of monetary compensation vis-à-vis lost bonuses; and injunctive relief to reverse and to prevent noncompliance with its duties under law. Anderson is thereby entitled to general and compensatory damages in amounts to be proven at trial.

**ANSWER:**    Defendants deny paragraph 375.

376.    Anderson seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

**ANSWER:**    Defendants deny that Anderson is entitled to the relief requested in

paragraph 376.

WHEREFORE, Plaintiff, FRANK ANDERSON, prays for judgment in his favor and against Defendant and that the court award him direct and consequential damages, statutory attorneys' fees, lost wages and benefits, liquidated damages, front pay, prejudgment interest, post judgment interest, and costs in this action including reasonable statutory attorneys' fees and expert witness fees, and grant such other relief as the Court may find appropriate.

**ANSWER:**    Defendants deny that Anderson is entitled to the relief requested.

## COUNT XIX
## (FRANK ANDERSON: TORT-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

Count XIX has been dismissed pursuant to the court's Order dated November 7, 2017.

## COUNT XX
## (EDWARD ESBOLDT: DISPARATE TREATMENT IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C.A. § 621 *et. seq.*)

382.    Esboldt restates and realleges paragraphs one through sixty-one (1-61) and one-hundred-ninety-four (194) through two-hundred-seventeen (217) as if fully stated herein as paragraph three-hundred-eighty-two (382).

**ANSWER:**    Defendants restate their answers to paragraphs one through sixty-one (1-

61) and one hundred ninety-four through two hundred seventeen (194-217) as if fully stated

herein as paragraph three hundred eighty-two (382).

383.    Esboldt is a member of a protected class within the meaning of the ADEA, wherein he is over the age of forty (40).

**ANSWER:**     Defendants admit paragraph 383.

384.     At all relevant times, Esboldt was meeting Defendant's legitimate business expectations.

**ANSWER:**     Defendants deny paragraph 384.

385.     Defendant subjected Esboldt to age discrimination by giving him less advantageous employment terms and conditions than given to younger employee(s).

**ANSWER:**     Defendants deny paragraph 385.

386.     The disparate treatment discrimination included, but was not limited to: 1) transferring Esboldt to an underperforming store; 2) criticizing and reprimanding Esboldt's performance; 3) building a case for Esboldt's termination; 4) instituting a campaign of unreasonable and unwarranted discipline against Esboldt; 5) giving unwarranted, negative performance reviews to Esboldt; 6) denying Esboldt bonuses based on the unwarranted, negative performance reviews; 7) giving Esboldt unattainable sales goals; 8) giving Esboldt write-ups for minor flaws and issues that were never before at issue in his career; 9) denying Esboldt the opportunity to transfer to another store; 10) failing to train and/or failing to sufficiently train Esboldt for the single store Director Position.

**ANSWER:**     Defendants deny paragraph 386.

387.     Defendants and its agents have willfully and intentionally discriminated against Esboldt on the basis of his age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C.A. §§621 *et. seq.*

**ANSWER:**     Defendants deny paragraph 387.

388.     Defendant failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring in the future. 42 U.S.C. § 2000e.

**ANSWER:**     Defendants deny paragraph 388.

389.     As a direct and proximate result of Defendant's discrimination against Esboldt, he has suffered and will continue to suffer damage including loss of wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional distress. Esboldt is thereby entitled to general and compensatory damages in amounts to be proven at trial.

**ANSWER:**     Defendants deny paragraph 389.

390.     The willful nature of the violations, committed with malice or reckless indifference to the federally protected rights of Cesario, warrant statutory punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

**ANSWER:**     Defendants deny paragraph 390.

391.     Esboldt also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

**ANSWER:**     Defendants deny that Esboldt is entitled to the relief requested in

paragraph 391.

WHEREFORE, Plaintiff, EDWARD ESBOLDT, prays for judgment in his favor and against Defendant and asks that the court award him direct and consequential damages, lost wages and benefits, liquidated damages, front pay, back pay, punitive damages pursuant to 42 U.S.C. § 1981a(b)(1), reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as the Court may find appropriate.

**ANSWER:**     Defendants deny that Esboldt is entitled to the relief requested.

### COUNT XXI
### (EDWARD ESBOLDT: RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C.A. §621 *et. seq.*)

392.     Esboldt restates and realleges paragraphs one through sixty-one (1-61) and one-hundred-ninety-four (194) through two-hundred-seventeen (217) as if fully stated herein as paragraph three-hundred-ninety-two (392).

**ANSWER:**     Defendants restate their answers to paragraphs one through sixty-one (1-61) and one hundred ninety-four through two hundred seventeen (194-217) as if fully stated herein as paragraph three hundred ninety-two (392).

393.     Esboldt engaged in statutorily protected activity by making informal and formal complaints to Defendant.

**ANSWER:**     Defendants admit that Esboldt engaged in protected activity by filing a charge of discrimination against New Albertsons Inc., AB Acquisitions LLC and Jewel-Osco with the EEOC on March 20, 2017.

394.     Defendant retaliated against Esboldt for engaging in the aforementioned statutorily protected activity by: 1) giving Esboldt unwarranted, negative performance reviews; 2) denying Esboldt bonuses based on the unwarranted, negative performance reviews; 3) subjecting Esboldt to further heightened scrutiny and excessive micromanaging; 4) creating a hostile work environment for Esboldt to work in; and 5) giving Esboldt unattainable sales goals, thereby setting him up to fail.

**ANSWER:**     Defendants deny paragraph 394.

395.     There is a causal connection between the statutorily protected activity and Defendant's action.

**ANSWER:**     Defendants deny paragraph 395.

396.     As a direct and proximate result of Defendant's retaliation against Esboldt, he has suffered and will continue to suffer damages including, pain and suffering, and extreme and severe mental anguish and emotional distress arising from a hostile work environment; losses of monetary compensation vis-à-vis lost bonuses; and injunctive relief to reverse and to prevent noncompliance with its duties under law. Esboldt is thereby entitled to general and compensatory damages in amounts to be proven at trial.

**ANSWER:**     Defendants deny paragraph 396.

397.     Esboldt seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

**ANSWER:**     Defendants deny that Esboldt is entitled to the relief requested in

paragraph 397.

WHEREFORE, Plaintiff, EDWARD ESBOLDT prays for judgment in his favor and against Defendant and that the court award him direct and consequential damages, statutory attorneys' fees, lost wages and benefits, liquidated damages, front pay, prejudgment interest, post judgment interest, and costs in this action including reasonable statutory attorneys' fees and expert witness fees, and grant such other relief as the Court may find appropriate.

**ANSWER:**     Defendants deny that Esboldt is entitled to the relief requested.

## COUNT XXII
## (EDWARD ESBOLDT: TORT-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

Count XXII has been dismissed pursuant to the court's Order dated November 7, 2017.


## COUNT XXIII
## (LESTER NELSON: DISPARATE TREATMENT IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C.A. §621 *et. seq.*)

403.     Nelson restates and realleges paragraphs one through sixty-one (1-61) and two-hundred-eighteen (218) through two-hundred-thirty-seven (237) as if fully stated herein as paragraph four-hundred-three (403).

**ANSWER:** Defendants restate their answers to paragraphs one through sixty-one (1-61) and two hundred eighteen through two hundred thirty-seven (218-237) as if fully stated herein as paragraph four hundred three (403).

404. Nelson is a member of a protected class within the meaning of the ADEA, wherein he is over the age of forty (40).

**ANSWER:** Defendants admit paragraph 404.

405. At all relevant times, Nelson was meeting Defendant's legitimate business expectations.

**ANSWER:** Defendants deny paragraph 405.

406. Defendant subjected Nelson to age discrimination by giving him less advantageous employment terms and conditions than given to younger employee(s).

**ANSWER:** Defendants deny paragraph 406.

407. The disparate treatment discrimination included, but was not limited to: 1) transferring Nelson to an underperforming store; 2) criticizing and reprimanding Nelson's performance; 3) building a case for Nelson's termination; 4) instituting a campaign of unreasonable and unwarranted discipline against Nelson; 5) giving unwarranted, negative performance reviews to Nelson; 6) denying Nelson bonuses based on the unwarranted, negative performance reviews; 7) giving Nelson unattainable sales goals; 8) giving Nelson write-ups for minor flaws and issues that were never before at issue in his career; and 9) denying Nelson the opportunity to transfer to another store.

**ANSWER:** Defendants deny paragraph 407.

408. Defendants and its agents have willfully and intentionally discriminated against Nelson on the basis of his age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C.A. § 621 *et. seq.*

**ANSWER:** Defendants deny paragraph 408.

409. Defendant failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring in the future. 42 U.S.C. § 2000e.

**ANSWER:** Defendants deny paragraph 409.

410. As a direct and proximate result of Defendant's discrimination against Nelson, he has suffered and will continue to suffer damage including loss of wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional

distress. Nelson is thereby entitled to general and compensatory damages in amounts to be proven at trial.

**ANSWER:**    Defendants deny paragraph 410.

411.    The willful nature of the violations, committed with malice or reckless indifference to the federally protected rights of Nelson, warrant statutory punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

**ANSWER:**    Defendants deny paragraph 411.

412.    Nelson also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

**ANSWER:**    Defendants deny that Nelson is entitled to the relief requested in paragraph

412.

WHEREFORE, Plaintiff, LESTER NELSON, prays for judgment in his favor and against Defendant and asks that the court award him direct and consequential damages, lost wages and benefits, liquidated damages, front pay, back pay, punitive damages pursuant to 42 U.S.C. § 1981a(b)(1), reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as the Court may find appropriate.

**ANSWER:**    Defendants deny that Nelson is entitled to the relief requested.

## COUNT XXIV
## (LESTER NELSON: RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C.A. § 621 *et. seq.*)

413.    Nelson restates and realleges paragraphs one through sixty-one (1-61) and two-hundred- eighteen (218) through two-hundred-thirty-seven (237) as if fully stated herein as paragraph four-hundred-thirteen (413).

**ANSWER:**    Defendants restate their answers to paragraphs one through sixty-one (1-

61) and two hundred eighteen through two hundred thirty seven (218-237) as if fully stated

herein as paragraph four hundred thirteen (413).

414.    Nelson engaged in statutorily protected activity by making informal and formal complaints to Defendant and by filing his Charge(s) of Discrimination with the EEOC against Defendant for discrimination, harassment, retaliation and failure to train that Defendant had subjected Nelson to throughout his employment with Defendant.

**ANSWER:**    Defendants admit that Nelson filed a Charge of Discrimination against

New Albertsons Inc., AB Acquisitions LLC and Jewel-Osco alleging discrimination, harassment, and retaliation and failure to train. Defendants deny the remaining allegations set forth in paragraph 414.

415. Defendant retaliated against Nelson for engaging in the aforementioned statutorily protected activity by: 1) giving Nelson unwarranted, negative performance reviews; 2) denying Nelson bonuses based on the unwarranted, negative performance reviews; 3) subjecting Nelson to further heightened scrutiny and excessive micromanaging; 4) creating a hostile work environment for Nelson to work in; 4) transferring Nelson to a smaller volume store; and 5) giving Nelson unattainable sales goals, thereby setting him up to fail.

**ANSWER:** Defendants deny paragraph 415.

416. There is a causal connection between the statutorily protected activity and Defendant's action.

**ANSWER:** Defendants deny paragraph 416.

417. As a direct and proximate result of Defendant's retaliation against Nelson, he has suffered and will continue to suffer damages including, pain and suffering, and extreme and severe mental anguish and emotional distress arising from a hostile work environment; losses of monetary compensation vis-à-vis lost bonuses; and injunctive relief to reverse and to prevent noncompliance with its duties under law. Nelson is thereby entitled to general and compensatory damages in amounts to be proven at trial.

**ANSWER:** Defendants deny paragraph 417.

418. Nelson seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

**ANSWER:** Defendants deny that Nelson is entitled to the relief requested in paragraph 418.

WHEREFORE, Plaintiff, LESTER NELSON, prays for judgment in his favor and against Defendant and that the court award him direct and consequential damages, statutory attorneys' fees, lost wages and benefits, liquidated damages, front pay, prejudgment interest, post-judgment interest, and costs in this action including reasonable statutory attorneys' fees and expert witness fees, and grant such other relief as the Court may find appropriate.

**ANSWER:** Defendants deny that Nelson is entitled to the relief requested.

## COUNT XXV
## (LESTER NELSON: TORT-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

Count XXV has been dismissed pursuant to the court's Order dated November 7, 2017.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, for failure to comply with jurisdictional prerequisites.

## SECOND AFFIRMATIVE DEFENSE

Insofar as Plaintiffs seek to recover relief for (a) alleged incidents occurring prior to the applicable limitations period for the filing of an administrative charge of discrimination; and (b) for alleged incidents of discrimination or harassment not listed in any charge, Plaintiffs may not recover any relief for such incidents.

## THIRD AFFIRMATIVE DEFENSE

To the extent that Plaintiffs have failed to comply with the duty to mitigate their alleged damages, Plaintiffs' damages are limited.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for compensatory or any other damages under ADEA and/or ADA are limited by the damages cap imposed by those Acts.

## FIFTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs are seeking punitive damages, they are not entitled to such relief because the Amended Complaint, and the claims set forth therein, fail to plead sufficient facts to support recovery of punitive damages.

## SIXTH AFFIRMATIVE DEFENSE

The alleged adverse employment actions, if any, with respect to Plaintiffs were based on legitimate, non-discriminatory, non-retaliatory reasons, and Defendants acted at all times in good faith.

## SEVENTH AFFIRMATIVE DEFENSE

Even if Defendants' actions and decisions were motivated, in part, by unlawful discriminatory intent (which Defendants deny), Plaintiffs' claims fail because Defendants would have taken the same actions and made the same decisions without regard to any alleged unlawful intent.

## EIGHTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs have failed to institute this action within the time required under the applicable statute of limitations, their claims for relief are barred.

## NINTH AFFIRMATIVE DEFENSE

To the extent that Plaintiffs' claims are subject to the doctrine of after-acquired evidence or unclean hands, any remedy or recovery to which Plaintiffs might have been entitled must be denied or reduced accordingly.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff Lee's claim for disability discrimination is barred because he was not disabled and/or not a qualified individual with a disability.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff Lee's claim for disability discrimination are barred because Defendants did not perceive Lee as disabled, nor did they take any action against Lee on the basis of an alleged or perceived disability or an alleged record of impairment.

## TWELVETH DEFENSE

Plaintiff Lee failed to request a reasonable accommodation for his alleged disability, and he otherwise failed to engage in an interactive process to identify a reasonable accommodation.

## THIRTEENTH DEFENSE

Any action taken by Defendants was taken for legitimate, nondiscriminatory business reasons, not on account of Plaintiff Lee's alleged disability.

## FOURTEENTH DEFENSE

Plaintiffs' claims fail to the extent that they are barred, in whole or in part, by the doctrine of waiver, equitable estoppel, unclean hands, and/or laches.

Defendants reserve the right to amend their Answer to raise any additional defenses that may become available during the discovery process.

**WHEREFORE**, Defendants, deny that Plaintiffs are entitled to judgment in any amount whatsoever, and respectfully submits that the entire Amended Complaint should be dismissed in its entirety on the merits and with prejudice, and that Defendants be awarded costs incurred in defending this lawsuit, including reasonable attorneys' fees, as well as such other legal and equitable relief as the Court deems proper.

Respectfully submitted,

JEWEL FOOD STORES, INC., A DIVISION
OF NEW ALBERTSON'S INC.


By: _____ */s/ Jennifer Schilling* _____
                    One of Their Attorneys

Jennifer Schilling ARDC# 6256634
Michael A. Wilder ARDC# 6291053
Lavanga V. Wijekoon ARDC# 6301183
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1000
Chicago, IL  60654
312.372.5520

Dated:        November 21, 2017

## <u>CERTIFICATE OF SERVICE</u>

Jennifer Schilling, an attorney, hereby certifies that, on November 21, 2017, she caused the foregoing ***Defendants' Answer and Affirmative Defenses to Plaintiffs' First Amended Complaint*** be filed electronically with the Clerk of the Court using the court's CM/ECF system. Notification of such filing will be sent to the following parties:

Nicholas F. Esposito (nfe@eslaw500.com)
Bradley K. Staubus (bks@eslaw500.com)
Christopher K. Crimer (ckc@eslaw500.com)
Christopher P. Rubey (cpr@eslaw500.com)
ESPOSITO & STAUBUS LLP
7055 Veterans Blvd. Unit B
Burr Ridge, IL 60527



*/s/ Jennifer Schilling*
Jennifer Schilling

Firmwide:147062051.2 093117.1001